## CONKLIN vs. EGERTON'S ADMINISTRATOR.

A power to an EXECUTOR to sell and dispose of real estate granted by a will, and to divide the proceeds among devisees to whom the estate was given by a previous clause of the same will, cannot after the death of the executor be executed by AN ADMINISTRATOR *cum testamento annexo*, notwithstanding the provisions of the revised statutes, that "In all cases where letters of administration with the will annexed shall be granted, the *will* of the deceased shall be observed and performed; and the administrators of such will shall have the rights and powers and be subject to the same duties as if they had been *named executors in such will*."

ERROR from the superior court of the city of New York. Thomas Asten, as survivor, &c. brought an action of *debt* on a bond executed by William Conklin to him and John Baker, as administrators, &c., of Abraham S. Egerton, deceased, bearing date 1st May, 1827, *conditioned* that during the life of one *Judith Myers*, the obligor should pay to the obligees annually the sum of $84; and that if they should within two years after the death of *Judith Myers* cause the fee of a certain lot to be conveyed to him *by the owners of the lot*, at a fair and reasonable price to be agreed upon, or ascertained in a certain manner, to be paid by the obligor on the delivery of the deed, that he would in addition to such price pay to the obligees the further sum of $1200, with interest from the time of the death of Judith Myers. This bond was given in consideration of the assignment of a lease executed by *Judith Myers* and one *Ephraim Hart*, the executor of Manuel Myers, to Abraham S. Egerton, for the term of the natural life of Judith Myers; and contained a

clause giving to Egerton, his heirs and assigns, the right of *pre-emption* at a price to be liquidated in the manner particularly pointed out in the lease. The plaintiff, after setting forth the bond and condition, averred that *Manuel Myers*, at the time of his death, was seised in fee simple of the lot mentioned in the bond, and that by his last will and testament he duly authorized and empowered one *Ephraim Hart*, his executor therein named, *after the death of Judith Myers*, to sell and dispose of the lot ; that *Judith Myers died* on the 13th November, 1832 ; that *Ephraim Hart died* previous to the decease of Judith Myers; that on the 10th April, 1834, the plaintiff, for the purpose of enabling him to comply on his part with the conditions of the bond executed by the defendant, procured administration to be granted *with the will annexed* to Alpheus Sherman, then public administrator of the city of New York, who took upon himself the discharge of the duties consequent upon such grant; that on the 1st May, 1834, the plaintiff *tendered* and offered to the defendant to cause the fee of the lot mentioned in the bond to be conveyed to him, at a price to be agreed upon as stipulated in the bond, and requested him to accept a conveyance, &c., and to pay the $1200 according to the condition of the bond ; but that the defendant utterly refused to do any thing in the matter, whereby an action had accrued, &c. The defendant pleaded, 1. *non est factum ;* 2. that the plaintiff did not offer to procure a conveyance *from the owner or owners,* or any person having power or authority to convey ; 3. that *Alpheus Sherman* had no power to convey ; 3. that the defendant had not refused to accept a conveyance, &c.

On the trial of the cause the evidence fully sustained the facts alleged in the declaration. Among other proofs adduced by the plaintiff, was the *will of Manuel Myers* bearing date 13th May, 1799, by which he gave unto his wife *Judith,* during the term of her natural life, the rents, issues and profits of all his real estate ; and *after her decease, devised* all his real estate *in fee* to two sisters, two nephews and five nieces, to take, share and share alike ; and for the more easy and equal division of his said real estate, he au-

thorized and empowered his executors, "hereinafter named," after the decease of his wife, *to sell and dispose* of the said estate for the most money that could be gotten for the same, and in due form of law, to execute deeds of conveyance for the same in fee simple; and *to divide the money arising from the sale* among his sisters, nephews and nieces. The testator nominated his wife *Judith* executrix, and his friend *Ephraim Hart*, executor, of his last will, &c. The evidence being closed, the counsel for the defendant insisted that the plaintiff was not entitled to maintain the action, on the ground that Alpheus Sherman, notwithstanding the grant of administration to him *with the will annexed*, had no authority to convey the lot mentioned in the bond, and requested the presiding judge so to instruct the jury. The judge declined so to charge, and on the contrary, instructed the jury that under the will of Manuel Myers, and the letters of administration with the will annexed, Mr. Sherman had authority to convey. The counsel for the defendant excepted to the charge, and the jury found a verdict for the plaintiff; on which judgment having been entered, the defendant sued out a writ of error. The case was very fully argued by

*P. De Witt & C. O'Conor*, for the plaintiff in error.

*W. Silliman*, for defendant in error.

*By the Court*, COWEN, J. Had Mr. Sherman, as administrator with the will of Manuel Myers annexed, the right or power to convey the lot? This is the only question before us, as presented both by the pleadings and bill of exceptions. By the statute, 1 R. L. of 1813, p. 316, § 21, it was enacted, in the words of 1 R. L. of 1801, vol. 1, p. 541, § 20, "that in all cases where administration shall be granted with a will or testament annexed, the will of the deceased in such testament expressed shall be observed and performed; and that *this act* shall extend to administrators with such will annexed, in the same manner as if they were executors named in such will." The statutes, 2 R. S. 16, § 22, 2d ed.

are as follows : "In all cases where letters of administra-
tion with the will annexed shall be granted, the will of the
deceased shall be observed and performed ; *and the admin-
istrators with such will annexed shall have the rights and
powers, and be subject to the same duties as if they had been
named executors in such will.*" Mr. Sherman belonged to
that class of personal representatives known to the law as
administrators *cum testamento annexo, de bonis non :* that is
to say, an administrator appointed to wind up the affairs of
an estate which has already been partially administered by
a previous executor or administrator, who is either dead or
incapable of further action. Blackstone, and other approved
writers, remark what is obvious, that his duty is very little
different from that of an executor. 2 Black. Comm. 503,
504. 1 Wms. Ex. 284.

The sections of the acts of 1801 and 1813, first cited, are
parts of statutes "concerning executors and administrators,
and the distribution of intestates' estates. They relate ex-
clusively to the *personal estate*, e. g. inventories, distribu-
tion, remedies by action, &c. The section quoted from the
new revised statutes makes part of an article entitled " Of
granting letters testamentary," 2 R. S. 13, 2d ed. and is im-
mediately followed by the article "Of granting letters of ad-
ministration with the will annexed, and in cases of intesta-
cy." Id. 16. The amount of the security to be required
for the faithful discharge of the appointee's duty, whether
executor or administrator, general or special, is governed
entirely by the value of the *personal estate.* § 6, 7, 42, 43 ;
and all the particular provisions contained in these articles,
either expressly or in their own nature, refer to the same
kind of estate. The twenty-second section, under which it
is claimed that Mr. Sherman had power to execute the
deed, is broader than that in the old section, of which it
was a revision. The old section extended the provisions of
the particular statute of which it made a part so far as it
respected executors, to administrators *cum testamento an-
nexo.* The revising section declares that they shall have
*the same rights and powers,* and be subject to the same du-
ties as if they had been *named executors* in the will. There

is no dispute that they take all the powers as well as rights and duties which belong to the *executor as such*, whether those powers were conferred by the act, or exist at common law.

The surrogate's court was created and its general powers prescribed by statute; and, looking at that alone, there is some difficulty in seeing how the surrogate is to acquire jurisdiction, or the administrator a right to act, where, as was probable in this case, the whole business of the estate in respect to the personalty was closed, and nothing left by which to measure the *security* to be given. Security would seem to be essential, and yet the bond could not be taken for want of any thing by which to estimate the amount of the penalty. § 42. There is also a total want of subject matter. There is no payment of debts to be made by a sale of lands; and letters testamentary or of administration granted by the surrogate, who comes in place of the ordinary or bishop of the English system, have respect, primarily, to the *personal estate* alone. Whether the total want of personal estate, be a jurisdictional defect or not, so as to render the appointment void as being *coram non judice*, it is used with great propriety by the counsel for the plaintiff in error, as an argmment against extending the words *powers of an executor*, used in the statute, beyond those which pertain to him strictly as such. The argument is certainly much strengthened, when it is seen that none of the provisions of other sections in the articles cited, can with any degree of propriety, be applied to the testator's *real estate*. The reason of the new provision in question is probably to be found in the fact, that the revised statutes had abolished the succession to the executor of an executor, and determined to substitute an administrator with the will annexed, who should give security. See sections 17 and 22, in 2 R. S. 15, 16, 2d ed., with the sections before cited concerning security. This would call for no greater power than belonged to the former successor, which, as we shall see, would not extend to a power of selling land. Stopping, therefore, with the statute, and construing it according to its subject matter and its object, it seems to me, that courts

ought to hesitate long before they extend the section in question to the *donee of a power in trust,* created by the will in order to effectuate a devise, even if we suppose that such a power, in a legal sense, belongs to him as an executor. We should feel quite unwilling to believe that the legislature intended to confer on a surrogate the right of transferring an important power confided by the testator to his friend, without recognizing the beneficiaries as parties to the proceeding, and substituting no one to resist the application for an appointment, if personally improper, to sue for its revocation when improvidently made, and without even demanding security for the due execution of the power.

Again ; the power in question was conferred in 1799, by a very solemn act, an express declaration of confidence, though that is always implied in such appointments ; and the statute which, it is claimed, has given it to the public administrator, was not passed till 1830. Even if the legislature had declared, in terms, that such a trust power might thus be transferred, the act would certainly be open to the question whether they intended that it should retroact upon powers previously created, (for they have not said it should,) or upon prospective powers only. The devisees interested in the sale of this property had a right, and they still enjoy the moral right to demand, that on the death of the original trustee, the power should either not be executed at all, or at least, if executed, that it should be done by some person appointed by and acting under the control of the court of chancery. 1 R. S. 724, 2d ed. § 68. Id. 728, § 102. A statute ought not, except where the terms are explicit and imperative, to be construed literally, if by such construction it will impair rights which became vested before its passage. If the act in question be at all operative upon the rights of devisees, still it is the more just construction to say, that its influence shall be confined to those who claim as such, under wills made since the statute was enacted. *Dash* v. *Van Kleeck,* 7 Johns. R. 477, and the books there cited.

Independent, however of the intrinsic difficulties arising upon the statute, conceding as I have for the purposes of the question that the office of selling the land belonged to Hart

*as executor*, I have not been able to perceive that, in this respect, the law considers him such. And it appears to me that the difference which has attended this novel effort, (for with us it is the first of the kind, though we shall see here-after it was once made and defeated in Ohio,) to vest in an administrator the power of selling the real estate of a devisor, has arisen from confounding the legal office of an *executor* with that of one who is not so in any sense of the word but who is the mere *donee of a trust power ;* an authority which, so far from having any reference to the office of executor, might just as well have been conferred by the will on any other not named as executor, and one who might have executed the power without probate or letters testamentary. An executor is one appointed to the general office of executing a man's last will and testament. 2 Black. Comm. 503. A testament in strictness concerns personal property merely. Until the revised statutes, it needed no witness of its publication; it belongs to the ecclesiastical jurisdiction ; it might, by the canon law, be made at the age of fourteen, and the executor could not act in all respects as such, till he obtained letters testamentary of the ordinary, with us of the surrogate; and it cannot be executed except by an executor or administrator. To make an executor, the will must appoint him such *eo nomine.* Even a trustee of all the testator's personal estate, named and appointed as such by the will, is not an executor. Where a man was appointed by the testator *trustee of his last will and testament,* and was committed by the ecclesiastical judge for not exhibiting an inventory and account, the king's bench discharged him on *habeas corpus,* saying that, in this character, the judge had no jurisdiction over his person. *The King* v. *Jenkins,* 1 Dowl. & Ryl. 41.

A *will,* or, as it is more properly called, a devise of real estate, is of an entirely different and opposite character to a testament. A devise is a conveyance of land, and not under the same jurisdiction as a testament. 2 Black. Comm. 501. The devisor must have reached the age of twenty-one years ; and, what is more material to the question before us, it is complete, or may be executed without the ap-

pointment or intervention of an executor or administrator. Indeed, these offices are neither of them predicable of a devise of real estate. The devisor may require some future act to be done, in order to the vesting of an estate; and may, and often does, delegate the power to some friend who is to designate the devisee, or make a sale and distribution of lands already devised in fee. But, in this, his friend does not act as executor; the law does not consider him as such. His powers are regulated by distinct departments of the statute or common law, those relating to powers in trust, the due execution of which are supervised not by the ecclesiastical tribunal, the surrogate's court, but by the courts of chancery and common law. The very opening of Mr. Sugden's treatise on powers settles the donee's character. His remarks are as follows: "A power given by a will, or by an act of parliament, as in the instance of the land tax redemption acts, *to sell an estate*, is a common law authority. The estate passes by force of the will or the act of parliament; and the person who executes the power merely nominates the party to take the estate." 1 Sugden on Pow. 2, id. 171, 2, S. P. 6th Lond. ed. That the estate passes by force of the devise, was held in a case where the devisor gave power to his executrix to sell land for the payment of debts, in 9 Charles I., *Dike* v. *Ricks*, Cro. Car. 335—a business much more pertinent to the general office of executor than the sale of Myers' estate; and the distinction has never been questioned before or since that time. Powell, in his treatise on devises, gives the result of the cases as follows: "And such authority must be strictly pursued; for the authority to sell is founded on the will alone, without which no authority would let in the persons directed to sell. The law, therefore, looks at the sale as a thing annexed *to the persons* of those to whom the authority to sell is given, and to no others, because of the *special trust* that is put in them by the testator; which trust no man can have by the will, (which in this respect operates as *a warrant of attorney*,) but only those who are named; and where there is but one alive, the authority is relinquished and gone, *because in such case they do not take*

*as executors virtute officii, but as trustees.* And that is the reason why they may sell the land, *although they refuse the administration.* But their *executors cannot sell, because the trust is personal.* It is otherwise where they take *as executors.*" Powell on Dev. 194. In *Franklin* v. *Osgood,* 14 Johns. R. 527, 553, which was a very well considered case, and in which Platt, J. delivering the prevailing opinion, says: "It is clear, that at common law, a naked power, given to executors to sell lands would not survive. It is like *a naked power of attorney* to do any other act given to several persons jointly; and if one die, the power expires; for it is a delegation of power for private purposes given generally to all the attorneys named in the power." This doctrine was not denied by Thompson, J., though he dissented on other grounds. The distinction is held by many other books, ancient and modern, both in respect to devises of land in trust to executors, and devisors of a naked power to sell. In respect to the latter, it is recognized by the statute. 2 R. S. 47, § 55, 2d ed.

Looking at the manner in which Hart's character has been treated in other courts, we can hardly recur too often to what has already been said: that the differences in the case before us have arisen wholly from confounding his two characters of *executor* and *attorney.* It will be seen hereafter to have been deemed so plain, by a very learned judge, as to be taken for granted, that Hart's *authority to sell* the land was a part of his power *as executor of Myers' testament.* It has been seen, I think, by what we have said, and the cases already cited, that this proposition cannot be maintained. It is impossible to deny, however, that the language of some of the books may, if read without keeping a steady eye to the real nature of the power of sale, give color to the proposition. Before entering farther, therefore, into the cases which enforce and illustrate the separation, it may be well to notice some of those which have probably been regarded as making the nature of the two powers identical. If it be seen that a power by will to sell real estate can with no more propriety be called executorial, than the power of an executor might be designa-

ted as that of an attorney—if the two powers are not more nearly identical, than letters testamentary and a written warrant of attorney, there is an end of the question. No one would pretend, that a statute declaring the authority of an executor capable of passing to an administrator would extend to a warrant of attorney, which the executor might hold, giving him authority to sell his neighbor's farm. The cases which resemble a power by will to sell lands, the nearest to that of executors, are those which allow survivorship for that purpose among several executors. Sugden, after premising a distinction in this respect, which has been often adverted to by courts, between a devise of land *to executors to be sold,* and a *mere will* that the devisor's *executors should sell,* viz. that in the former case the power survives, but in the latter not, observes : " Cases are not wanting on the other side of the question; and in the case of *Houell* v. *Barnes,* Cro. Car. 382, and other books, although it was holden that the executors took an authority, only, yet Jones, Crooke and Barkeley determined that the survivor could sell. Jenkins gives it as his opinion, that if a devise be that A. and B., the executors, shall sell certain land, and near the end of the will the testator also names them executors, if the one dies, the other may sell; for *the interest is annexed to the executorship,* by this repetition in the will. Mr. Hargrave has endeavored to establish that where the power is given to *executors,* or to persons *nominatim* in *that character,* the *survivor* may sell, as the power is given to them *ratione officii ;* and as *the office survives,* by parity of reason the *authority should also survive.* And the liberality of modern times will probably induce the courts to hold, that in every case where the power is given to *executors,* as the office survives, so *may the power.*" 1 Sugden on Pow. 143, 4, 6th Lond. ed. I have cited Sugden as embodying the cases and writers which present the very strongest points of analogy, between the two powers. He cautions us in a note not to confound a *mere power to sell* with a *devise* to trustees ; and expresses his serious doubts whether; upon present authority, the former can survive, even though conferred on executors either *nominatim* or *as*

*executors, ratione officii.* But admitting this to be settled in the affirmative, it still comes short of showing that the power of sale is exercised by the nominees or the survivors *as executors.* The confusion arises from its being said that the power is *annexed to the office* of executors, as if it therefore made part of the office; whereas, a little attention will show that the whole is but a designation of the persons who are to execute what Powell, and after him, Platt, J. correctly call a *mere warrant of attorney to sell the land.* True, it must, when derived from a devisor, be executed in the name of the attorney because the principal is dead. But this is no more than a necessary change in the form of the deed. Take the case of a devisor, declaring by will that the county judges shall sell his land; one of the five dies, and the next day the survivors make the sale. That they may do, within the principle to which the remarks of Mr. Sugden give countenance. The reason is, because, by the will, *the power is annexed to the office* of judges. They take *ratione officii.* Yet suppose a statute could pass transferring in terms all the powers, rights and duties of the county judges to others, no one would pretend that their power to convey the land would be vested in the transferees. Yet the case would be the same with the one now before us, provided we are right in supposing that the *donee of a trust power* is not, as such, *an executor.* The question of survivorship is one of designation, and nothing else ; saying that the executors or county judges shall sell, is construed to mean the same as if the testator had said, in so many words, that the sale might be made by them or the *survivors of them.* Many instances of the power and practice of doing this expressly, and even extending the authority to persons not *in esse,* are set down by Mr. Sugden, in his treatise on powers, vol. 1, p. 145, *et seq.* 6th Lond. ed. Thus, a testator may expressly devise a power to the executors of his executors ; and, in this illustration from cases of designation, we may advert to powers conferred upon trustees, as well as naked powers, for the principle is the same. A power may be given to the heirs of a person who is yet alive. Two remarkable instances depending on this prin-

ciple occurred in *Mansell* v. *Mansell*, Wilm. Notes, 36, and *Cole* v. *Wade*, 16 Ves. 27. It is a principle quite pertinent to the case in hand; and its consideration will presently be resumed when I come to notice cases cited by the counsel for the defendant in error, as going still farther to show that Hart's power of selling the land belonged to him in the capacity of executor, and not as attorney. I propose first to notice how the matter has been considered by a recent case in this court, even where the power of sale was coupled with an interest.

*Judson* v. *Gibbons*, 5 Wendell, 224, was the case of *a devise to executors* of real and personal estate, in trust, to sell, take care, &c., invest the income, and distribute, &c. One of the executors refused to act. Savage. Ch. J. said, " there was no act of his necessary to be done by way of condition precedent. The estate in land [erroneously printed ' hand'] at the testator's death, *belonged to the executors as trustees, not as executors.* The character of executor and trustee are not necessarily blended. Suppose it had been part of the trust, that the real estate *should be sold,* all the trustees must unite in the conveyance." And the renouncing executor was held to be bound as trustee, though he had declined the office of executor. The case of Hart, in the matter before us, is the more distinct from that of an executor, inasmuch as he took no interest in the land, but held a mere naked power. Savage, Ch. J. in *Jackson, ex dem. Bogert,* v. *Schauber,* 7 Cowen, 183, 194, and the authorities there cited. *Sharpsteen* v. *Tillou,* 3 id. 654. *Woodbridge* v. *Watkins,* 3 Bibb, 350. *Jameson* v. *Smith,* 4 id. 307.

Under this view, it may be proper to observe, also, before adverting farther to the authorities cited by counsel, that the very question now before us arose and was determined, upon distinctions drawn from the common law, before the supreme court of the state of Ohio, sitting as a court of chancery, in the case of *Wills* v. *Cowper,* 2 Ham. R. 124. The devisor having land lying in Ohio, but himself residing in Virginia, where is a statute, *in terms,* authorizing an administrator with the will annexed, to execute a power of selling

land, given by the will to an executor, made his will con-
stituting J. Baker his executor, with full power to dis-
pose of all his lands in the states of Ohio and Kentucky.
Baker renounced the executorship, and the administrator
with the will annexed, having, as such, agreed to sell the
land which lay in Ohio, the bill was filed by the vendee to
compel a specific execution. This was resisted and denied
by the court, on the sole ground that the power of the ex-
ecutor could not thus be executed by one whom the testa-
tor never had mentioned, nor could have contemplated as
a depositary of such a power. Sherman, J. in delivering
the opinion of the court, shows that the general office of ad-
ministration, which relates to mere personalty, is considered
in a light very different from special naked powers confer-
red by a devise. He says : " It is a general and well set-
tled rule, both at law and in equity, that a power given by
will to the executor to sell and convey land, is to be consid-
ered as a personal trust. In contemplation of law, the
power is given in consequence of the confidence which the
testator had in the judgment, discretion and integrity of the
executor ; and the execution of that power cannot by the
executor, be delegated to any other person. It would be
absurd to suppose that the confidence which the testator
had in the knowledge and integrity of his executor and
which induced him to confide to such executor the power
of selling and conveying his lands, could extend to unknown
persons. To render a sale under such a power good and
valid, the executor must personally assent and act ; and up-
on this principle it has been held, that a joint authority given
to two executors, can only be exercised by the joint act of
both, and is determined by the death of one." The opinion
in this case is farther material, as bearing on an argument
advanced for the defendant in error, which supposed that a
mere power to do an act of ordinary sale, was not the sub-
ject of that special trust and confidence which is considered
by the law as so strictly personal that it cannot be delegated
to another, or at least that it shall not survive, and even
pass by succession to the executor of an executor.

I will now resume the question as to the *identity* of an executorship and a trust power to sell land conferred by a will, as it stands upon some quotations made in the course of the argument for the defendant in error. Powell on Devises is relied upon, who states certain decisions, which are cited to us through that book. I will state the doctrine of Powell as I understand it. He says, in effect, that where a will gives a general authority to sell land *for the payment of debts*, naming *no one* as the person who is to make the sale, there, as the executors or the survivors of them, and even the executor of an executor, are the persons to whom, as such, the duty of payment attaches, the will has been held to imply that such survivor, &c., may sell. Powell on Dev. 196, 197, and cases there cited. But neither this nor any other book goes farther; and the whole is evidently no more than the testator might have done in another form, as we have just seen. It is the same as if he had said expressly, *the survivor*, &c., should sell. Whoever the implied agent for selling, may be, the sale does not, therefore, take effect as emanating from an executor, but from an individual who has been designated by necessary implication, rather than there should be a failure of the power. On the other hand, Wentworth puts it, that " where, by will, a *special trust* is recommended *to an executor*, as *to sell lands*, &c., this not performed in his lifetime, shall not be performed by his executor. Wentworth's Off. Ex. ch. 20. Mr. Sugden, in the 6th London edition of his Treatise on Powers, vol. 1, p. 133 to 139, pl. 26 to 36, has considered the cases which have gone upon this distinction, and he evidently regards it as a mere question of *designatio personæ*. He introduces the subject by the following remark: " It sometimes happens, that a testator directs his estates to be sold for certain purposes, without declaring *by whom* the sale shall be made. In the absence of such a declaration, if the fund be distributable by the executor, he will have the power by implication." Id. p. 133, pl. 26. He then states the cases in detail from Keilw. 17, H. 7, to *Tylden* v. *Hyde*, 2 Sim. & Stu. 238, A. D. 1825. The remark of Sir John Leach, the vice chancellor, after hearing the argument of the latter

case, will show the utmost extent to which the doctrine can be carried. He says, p. 241, "Where there is a general direction to sell, but it is not stated *by whom* the sale is to be made, there, if the produce of the sale is to be applied by the executors in the execution of their office, a power to sell *will be implied to the executors.*" That was not like the case at bar, on a will *naming* the man, but a *general direction* to sell real and personal estate, and distribute both among persons named; and it was held, the testator, therefore, intended that the executor should perform the act of selling both. Mr. Sugden, himself, who was afterwards chancellor of Ireland, argued on one side. The attention of a man so distinguished for ability and research, having been drawn to the question, both as counsel and as author, we may well allow that he has exhausted the sources of judicial instruction. At pl. 30, he adds: "And in one case, Mr. Justice Wild conceived, that the executor of an executor might sell, which opinion appears to be well founded, because the chain of representation was not broken; and the *intent was*, that the power should be executed *by him* to whose hands the money was to come." At pl. 35 and 36, after a further consideration of cases, and especially an elaborate examination of the famous case of *Pitt* v. *Pelham*, 1 Ch. Cas. 178, 1 Lev. 304, *S. C.*, he concludes with this result: "It appears, therefore, to be well settled, that a power in a will to sell or mortgage, *without naming a donee*, will, *if a contrary intention do not appear*, vest in the executor, if the fund is to be distributable by him, either for the payment of debts or legacies. And, *it seems*, that whilst the chain remains unbroken, the power, until exercised, will go from him to his executors; and if the produce of the real estate is blended with the personal estate, the power to sell will vest in the executor *by implication.*" I repeat, therefore, that the whole is a search after the donee of a common law power. The simple reading of *Pitt* v. *Pelham*, shows that it is so. The dispute in this class of cases, and I appeal to them as collated by Sugden, is as to whom the devisor intended to confide the sale. Was it to the heir, to the executor, or some other trustee named in the will?

Nay, did not the testator mean that the power should go both to his immediate executor and the executor of the latter, as successive donees of the power ? He had power expressly to declare either, 1 Sugd. on Pow. 144, 5 ; id. 148, 149 ; but having omitted to speak, whom does he mean? The person being once named, however, as donee, either directly or by any terms of designation, then *expressio unius personæ est exclusio alterius.* And whether the designation of the donee be by name, by other direct words, or by implication, he takes the power, not *as executor*, but *as trustee.* Accordingly, Mr. Sugden, in the very next breath, p. 138, pl. 37, says : "It remains to observe, that where the power is given to executors, they may exercise it, although they renounce probate of the will."

The doctrines we have been considering have long been settled. In H. 7, Y. B. fol. 11, b., which Mr. Sugden, No. 1, in App. to his treatise on powers, has saved us the labor of decyphering from abbreviated Norman French, it was argued, " that if a man has feoffees upon confidence, and make a will that his executors shall alien his lands, there, if the executors renounce administration of the goods, yet they may alien the land, *for the will of land is not a testamentary matter*, nor have the executors to interfere in this will, except so far as a *special power is given to them.* And if a man has feoffees in his land, and makes his will that his executors shall sell his land, and then he does not make executors, there the ordinary shall not meddle with the land, nor the administrator neither, for the ordinary has *only to meddle with testamentary matters, as of goods ; and consequently no more can the administrator, who is but his deputy.* And therefore it was lately adjudged in the exchequer chamber, by all the judges of England, that if a man makes a will of his lands, that his executors shall sell the land, and alien, &c., if the executors renounce administration and to be executors, there neither the administrators nor ordinary can sell or alien, &c. *Quod nota. Quod fuit concessum per Rede et Tremaile*, for good law. And if a man makes his will that his *executors* shall alien his land, *without naming their proper names*, if they refuse the administration and

to be executors, yet they may alien the land; *quod fuit concessum per Fineux et Tremaile,* for clear law. *Rede non dedixit.* And if a man makes his will that his land which his feoffees have, shall be sold and aliened, and does not say by whom; there his executors shall alien that, and not the feoffees, *per Rede, Tremaile & Frowik. Fineaux* said nothing to this, this day; but the day before, he, in a manner, affirmed this. *Conisby* said that the *feoffees* shall alien this, for they have the confidence placed in them, &c. But this was denied, for *executors* have much greater confidence placed in them than the feoffees have; for the money to arise by the sale of the executors shall be assets in their hands, therefore they shall sell. *Fineux, Rede* and *Tremaile* said, that if a man makes his will that his feoffees shall alien his land, before the alienation the heir may take the profits, and they are seised to his use; and if an alienation be not made by them, the heir shall have the land forever." We here have the same search as is instituted by the modern cases, for the man whom the testator intended as his confidential trustee, the same inviolability of that confidence; when once ascertained; and above all, whether the person be expressed or implied, his rights are clear of all testamentary matters; letters from the ordinary can neither add to, nor the want of them take from his authority. He is a mere common law trustee or donee of a power. *Quoad hoc,* he is not executor. This is the same doctrine laid down by Chief Justice SAVAGE, in *Judson* v. *Gibbons*; and which has not been contradicted, but often re-affirmed, during an interval of 350 years. He treats it as forming an element in the judicial mind, for he cites no authority. It is presented as clearly in the pages of *Blackstone,* as by the labored analysis of the Norman lawyers, which we have read from Sugden's translation of the Year Book. The combination of the two powers in Hart can scarcely be resolved into their distinct and totally different natures, more plainly that it has thus been, by a school renowned for the elucidation of legal matters much more subtle and evanescent. The case is none the less striking because it was made before the statute of 21 and 34 H. 8, previous to which the only method of de-

vising land was by first making a feoffment to the uses of the will. A devise, whether before or since the statute, was but a mode of conveying real estate, with which an executor, as such, had nothing to do, even though the power of sale was conferred upon him by the same will which made him executor of the personal estate. The land, says the Year Book, is *not a testamentary matter.*

Whether, therefore, we regard Hart as the depositary and distributor of a common fund arising from the avails of real and personal estate in his hands at the same time, or, as he really is, the mere instrument of a devise entirely distinct from the personalty, his acts, in respect to the land, were not and could not be performed in his capacity as executor; *quoad hoc* he was an agent acting under a private power of attorney. It is the same thing as if the testator had drawn up separate wills, the one of his personalty naming Hart as executor, and the other of his land naming him as the man to make a sale. In the first case only would he be executor, as deriving his powers from a peculiar system of laws, administered by the church, under forms from which alone he derived his powers, and a nomenclature which gave him his title; a system equally distinct for its unbroken continuity from remote antiquity. From the time of Henry 2 to Henry 8, the right of devising land as a part of the general law was suspended, as that of alienation in any other form was, for most of the same interval. Land was the substratum of the feudal system, where executors were necessarily unheard of, because successions to the heir must remain unimpaired; and when its fetters were broken, alienation, both by devise and otherwise, was regulated by the common law proper, under the action of its own distinct judicatories, and by a machinery and nomenclature to which executors were utterly unknown. For *testament*, was substituted the word *devise;* for *executor*, the words *trustee*, or *donee of a power;* and one 'appointed by will to sell land could with no more propriety be denominated an executor, than a *devisee* under the latter system, could be called a *legatee* in the vocabulary of the canon law. An executor is a creature of that law, and powerless and unknown to the

law which regulates the alienation of real property by will or otherwise. The two systems have descended to us, not merely with the same theoretical, but the same practical distinctness. A statute authorizes an *administrator* to sell land, in certain cases for the payment of debts ; yet the very system of law to which that statute belongs, when it comes to consider the nature of his power or his act, will not allow it to be called or practically treated as the power or act of an *administrator*. He is then *a naked agent* for the sale of land, like the comptroller who sells for taxes. He is without interest, without inherent authority, and is the creature of the statute under which he acts, the same as the donee of a trust power is the creature of the statute of wills, or of the devise itself.

I must be excused for having several times repeated the distinction upon which I have conceived this case to turn, as it stands affected by various authorities and instances, ancient and modern. My first impression on the opening of the case, that the distinction still remained in all its force, continued notwithstanding the argument for the defendant in error. And I should, in the ordinary course, have felt little embarrassment in adopting it. But I was for a time led to doubt whether it had not faded from our system, when I saw it unhesitatingly repudiated by a high and learned court, to which the jurisdiction of trust powers has been more specially committed by the law.

On a bill in chancery, filed by Mr. Sherman to compel a specific performance by Conklin, now the plaintiff in error, the chancellor said, "Whatever doubts may have previously existed, there is no doubt since the revised statutes, that an administrator with the will annexed may sell real estate under a power contained in the will, in the same manner as if he had been named as executor therein. 2 R. S. 72, § 22. In this case the testator must have contemplated the event of Hart's surviving the widow, or that the power of sale and distribution should be made by an administrator with the will annexed, under the law then in force." In the application of the first remark to the case before him, the learned chancellor must have assumed as a matter of no

difficulty, that a man *nominated* to sell real estate in a will which appoints him executor, makes the sale *as executor*. He does not discuss nor even allude to the question whether he does not sustain a character entirely distinct, a character which in no propriety of legal speech can, as to this act of sale, be called that of an executor. The confusion of his two characters, I have before stated, as the undoubted ground of the difference which has arisen between the parties before us, who seem still to be litigating with great pertinacity, great confidence, and so far as the arguments of counsel before us are to be considered, with an ability and power which seem to justify that confidence. Although his honor the chancellor did not deem it necessary to discuss the question now very ably argued before us, how it has been argued elsewhere we know not, I have no doubt that we have the grounds of his opinion well put forward in the argument which has been submitted by the counsel for the defendant in error. I have considered that argument with the attention which it demands of itself, and, if possible, even more, from the respect due to it as embodying the reasons of the chancellor. Yet it will have been perceived, that the considerations which I have thought belonging to this case, have had an effect upon my mind far different from that produced on the minds of other judges. So far from feeling no doubt that the administrator may convey under the statute, I have been unable to resist the conclusion, that Mr. Hart's capacity as the donee of a common law power under the will, not being that of an executor in any legal sense, it cannot be made the subject of a statute which professes to translate the powers of an executor to another. My opinion is, both upon the words of the section in question and its intention as derivable from its history, its reason and context, that the legislature did not mean to confer on an administrator with the will annexed any greater power than they have provided that he shall give due security to perform. This, in no part of the revised system of administration, extends beyond the personal estate, or assets arising from a sale of real estate for the payment of debts.

In respect to the chancellor's remark as to an *implied power :* I have also, as it will have been perceived, examined the cases, to see how far the testator Myers could be holden to have intended, under the old law, that on the premature death of Hart, the administrator should convey. That question has not been much discussed by the counsel. I have cited the former statute, which extends to the administrator with the will annexed its own provisions only. These do not touch the question; and I have been unable to find a single book which suggests that an administrator was ever considered as coming by implication within any clause by which a power of sale is devised even generally. But where the agent of sale is clearly pointed out by the devisor, I must be pardoned for supposing that all the cases and books which have spoken to the question, and there are many running through centuries, have denied that any room is left for legal implication. In *Wills* v. *Cowper,* as we have seen, it was held expressly, that an administrator with the will annexed could not execute a power to sell lands, which the will delegated to the executor; even though it was made in Virginia, which had a statute expressly transferring such authority ; the land to which it related lying in the state of Ohio.

We are of opinion that the judgment of the court below should be reversed ; a *venire de novo* to go from that court ; *the costs to abide the event.*