HARVEY TAINTER *vs.* ASA W. CLARK.

C., by his last will, gave to his wife the interest and income of $1000, and to his daughter the use and income of $1000, during her life: After making other devises and bequests, he devised and bequeathed the residue of his property, real and personal, to his daughter and her children, and to his grandson, in equal shares, subject to the rights and directions afterwards given, by the will, to the executor therein named, and subject to the payment of his (C.'s) debts: He then appointed T. his sole executor, and authorized him to sell and convey such of his (C.'s) property, as in T.'s judgment would best promote the interest of all concerned, to raise the $2000 for the use of C.'s wife and daughter, and to pay his debts: T. declined to act as executor, and D. was appointed administrator of C.'s estate, with the will annexed: C.'s widow waived the provision made for her by the will, and dower was assigned to her: D., under his appointment as administrator, and by no other authority, sold and conveyed C.'s real estate, for the purpose of raising money to pay C.'s debts and the legacies given by his will. *Held,* that D. had no authority to sell the testator's real estate, and that the sale and conveyance thereof by him were void, as against the testator's heirs.

WRIT OF ENTRY, to recover one undivided eleventh part of a tract of land in Leicester.  The case was submitted to the court upon the following agreed statement of facts:

" Ephraim Copeland died, on the 3d of March 1842, seized of the demanded premises, and of other real estate in Leicester   By his last will, made on the 27th of May 1837, and duly proved and allowed in August 1842, he made the

following (among other) bequests : ' In the *first* place, I give, bequeath and devise to my wife, Tamesin Copeland, the income and interest of one thousand dollars. In the *second* place, I give to my daughter, Lucy Tainter, wife of Harvey Tainter, the use and income of one thousand dollars during her natural life. In the *fifth* place, I give, bequeath and devise in trust, to my executor hereinafter named, a strip of land [described] for the site of a school house, in case I should not erect one in my life time, and access thereto. Also one thousand dollars, at the decease of my said wife, for the following uses forever, to wit, to maintain a school house, and a school to be taught by a female or females, &c. And in order to accomplish said object, said trustee and his heirs shall have reasonable time to bring the same about. In the *seventh* place, I give, bequeath and devise all the rest, residue and remainder of my estate, real, personal and mixed, to my daughter, and her children born and to be born in lawful wedlock, and my grandson, Ephraim Copeland, in equal shares, subject to the rights and directions given by me to my executor hereinafter named, and to the payment of my just debts. In the *eighth* place, I hereby nominate and appoint Captain Jonas Tucker of Charlton to be the sole executor of this my last will and testament, and hereby authorize and fully empower him to sell and convey such of my property, as in his judgment will best promote the interest of all concerned, to raise the two thousand dollars for the use of my wife and daughter, and to pay my just debts.'

" The daughter mentioned in said will is the wife of the demandant, who had nine children born of her in lawful wedlock, and living at the time of the testator's death, and none born since. Lucy K. Tainter, one of said children, died September 16th 1844, leaving the demandant (her father) her heir ; whose interest he seeks to recover in the present action.

" On the 4th of April 1842, the said Jonas Tucker declined the office of executor, in these words: ' I, the subscriber, having been named as executor, in the last will and testament

of Ephraim Copeland, late of Leicester in said county, deceased, do hereby decline that trust. Jonas Tucker.' And in April 1842, Harvey Tainter, the demandant, was appointed special administrator of said Copeland's estate, and in May 1842, he returned to the probate office an inventory of said testator's property, in which his real estate, including the demanded premises, was appraised at $7566, and his personal property at $739·17. The amount of other personal estate, not appraised, was $129·50.

" In August 1842, Tamesin Copeland, the widow of the testator, waived the provision made for her in his will, and claimed her dower, which was, in November 1842, set out to her, to wit, a third part in value of the testator's real estate, but no part of the demanded premises.

" On the 3d of January 1843, Ebenezer Dunbar, a creditor of the estate, petitioned the judge of probate to be appointed administrator, with the will annexed, and, in pursuance thereof, on the first Tuesday of February 1843, administration of said estate was committed to him, with the will annexed In April 1843, he returned to the probate office an inventory of said testator's property, in which his real estate, including the demanded premises, was appraised at $6566, and his personal property at $65·16. Also good notes at $271·77, and bad notes $71·50.

" By virtue of the authority derived by this appointment of administrator, with the will annexed, and no other, the said Dunbar, after administering the personal property, proceeded to sell, at public auction, all the real estate left by said testator, (including reversion of land set off for his widow's dower,) for the purpose of raising money to pay the debts and legacies ; and among the deeds executed by him, in his said capacity, is the deed conveying the tract of land, described in the demandant's writ, to the tenant, who is son in law of said Dunbar ; said deed bearing date October 18th 1843. Notice was given of the sale of said real estate, and the same was sold at the times, and in the lots, and to the persons, and for the prices, mentioned in the affidavit of said Dunbar, filed in the probate office.

" The demandant, previously to the sale, recommended how the real estate should be lotted out, in order to sell best, and it was sold in such number of lots as he had recommended."

After *G. Parker*, for the demandant, had stated the case, the court expressed a wish to hear the tenant's counsel first.

*E. Washburn & Bacon*, for the tenant. The question is, whether Tucker's authority to sell the land extended to Dunbar. See Rev. Sts. *c.* 63, § 5, and *c.* 71, § 20. The authority was given to Tucker, as executor, and passed to the administrator with the will annexed. The letters testamentary were the criterion and proof of the power, which was not a naked one, but was coupled with a trust. In England, Dunbar would have been compelled by a court of chancery to sell the real estate, in execution of the trust. The probate court could not exercise this power, and a license to sell, given by that court, would be a nullity. See *Farwell* v. *Jacobs*, 4 Mass. 634. *Crocker* v. *Crocker*, 11 Pick. 255. *Hall* v. *Cushing*, 9 Pick. 406. *Prescott* v. *Pitts*, 9 Mass. 376. *Jackson* v. *Ferris*, 15 Johns. 346. *Larned* v. *Bridge*, 17 Pick. 339. *Gibbs* v. *Marsh*, 2 Met. 243. *Brown* v. *Higgs*, 8 Ves. 574. *Franklin* v. *Osgood*, 14 Johns. 554. Co. Lit. 113 *a*, and Hargrave's note. Pow. Dev. (Jarman's ed.) 233, 239. The case of *Homer* v. *Shelton*, 5 Met. 462, was one in which the executors might exercise their power, or not, at their discretion. *Aliter*, in the case at bar.

The fifth clause in the will shows that a personal trust was not reposed in Tucker; for his heirs are intrusted with the management of the devise for the school.

A power defectively executed will not be disturbed by a court of equity. *Earl of Darlington* v. *Pulteney*, Cowp. 267.

When two intentions are expressed, a general and a particular one, and the particular intent cannot take effect, the words shall be so construed as to give effect to the general intent. Com. Dig. Poiar, B. 1. a. *Jackson* v. *Veeder*, 11 Johns. 169. In the present case, Tucker had the power to select the lands that should be sold, and also the power to sell. The general intention of the testator was to pay the

debts and legacies. The particular intention was, that the surplus, if any, should be such of the estate as Tucker should select. The particular intent could not be carried into effect, because the whole real estate was required to pay the debts. The general intent, therefore, was well effected by the administrator's sale. Cruise's Dig. tit. 32, c. 20.

*G. Parker*, for the demandant. When a naked power is connected with a personal confidence, as in this case, the power cannot be transmitted. See *Ventress* v. *Smith*, 10 Pet. 161. *Combe's case*, 9 Co. 75. *Ingram* v. *Ingram*, 2 Atk. 88. Sugden on Powers, (1st Amer. ed.) 165, 166. 4 Kent Com. (5th ed.) 327. Pow. Dev. (1st ed.) 292. *Lancaster* v. *Thornton*, 2 Bur. 1027. *Cole* v. *Wade*, 16 Ves. 27. *Walter* v. *Maunde*, 19 Ves. 424. *Lessee of Moody* v. *Vandyke*, 4 Binn. 31. *Wills* v. *Cowper*, 2 Ham. 124. *Conklin* v. *Egerton's Administrator*, 21 Wend. 430.

The decision was made at September term 1848.

WILDE, J. In this case both parties claim title, respectively, under the last will and testament of Ephraim Copeland; and the case turns on the validity of the tenant's title. By the will, Jonas Tucker was appointed executor, in the words following : " In the eighth place, I hereby nominate and appoint Captain Jonas Tucker of Charlton to be the sole executor of this my last will and testament, and hereby authorize and fully empower him to sell and convey such of my property as in his judgment will most promote the interest of all concerned, to raise the two thousand dollars for the use of my wife and daughter, and to pay my just debts." The executor renounced and declined the trust as executor, and Ebenezer Dunbar, a creditor of the testator, was duly appointed administrator of his estate with the will annexed ; and afterwards sold and conveyed the demanded premises to the tenant. The question is, whether this was a valid conveyance. It is contended for the tenant, that it was, by virtue of the power given to the executor, which devolved on the administrator on his appointment to administer the estate according to the will.

It is admitted that if this were merely a naked power to

sell, it would not by law be transmissible to the administrator; but it is argued, that this power was coupled with a trust, and was therefore well executed by the administrator. On the other hand, the demandant's counsel contends, that the power was given to Tucker *nominatim*, and not *qua* executor; and whether coupled with a trust or not, it was not transmissible to the administrator.

In most of the English authorities cited on this point, the question was, whether, when a power was given to several, and one of them died, or refused to act, the power would survive. Lord Coke makes a distinction between those cases where a power is to persons *nominatim*, and those where it is given to them by the name of their office. "If," he says, "a man deviseth his lands to A. for term of life, and that after his decease his lands shall be sold by his executors generally, and make three or four executors, and during the life of A. one of the executors dieth, and then A. dieth, the other two or three executors may sell; because the land could not be sold before, and the plural number of his executors remain. But if they had been named by their names, as by L. S., L. N., &c. his executors, then in that case the survivors could not sell the same; because the words of the testator could not be satisfied." Co. Lit. 112 *b.* 113 *a.* Mr. Hargrave in his notes on Co. Lit. (note 146) expresses the opinion that this distinction has the appearance of too curious and overstrained a refinement; and he cites a case in which it was adjudged against the distinction. But he admits that it had been adopted in cases subsequent to the publication of Coke upon Littleton. Mr. Sugden, after reviewing the authorities, states the following propositions as deducible therefrom: 1. That where a power is given to two or more by their proper names, who are not made executors, it will not survive without express words. 2. That where it is given to three or more generally, as to "my trustees," "my sons," &c. and not by their proper names, the authority will survive whilst the plural number remains. 3. That where the authority is given to "executors," and the will does not expressly point

to a joint exercise of it, even a single surviving executor may exercise it. But, 4. That where the authority is given to them *nominatim,* although in the character of executors, yet it is at least doubtful whether it will survive. Sugden on Powers, (1st Amer. ed.) 165, 166. These propositions seem to be well sustained by the authorities, and the weight of authority is in favor of the distinction laid down by Lord Coke.

But the question in this case is not whether a power given to two or more executors to sell will survive, if one dies or refuses to act. At common law, before the *St.* of 21 Henry 8, *c.* 4, it is clear that it would not. But by that statute it was provided that where lands were devised to be sold by executors, and some of them refuse to accept administration, all sales by the executor or executors who do accept shall be as valid as if all the executors had joined. The question has been, whether this statute extended to executors where a power to sell was given to them *nominatim.* And all the authorities agree, that if a power is given, indicating personal confidence, it must be confined to the individual or individuals to whom it is given, and will not, except by express words, pass to others than the *trustees* originally named, though they may, by legal transmission, sustain the same character. So it was decided in *Cole* v. *Wade,* 16 Ves. 27, and in many other cases.

That such a personal confidence in the executor is indicated by the will, in this case, is manifest. He was to raise $2000, to hold in trust, and to pay over the interest of $1000 to the widow of the testator, and the interest of the other $1000 to his daughter, during their respective lives, and after their decease to appropriate the principal to other uses. If, then, this power, coupled with a trust, had been given to two executors by name, and one had died or declined the trust, the other could not have executed the power. And clearly such a power cannot be delegated, or legally transmitted, to an administrator with the will annexed.

There is another ground on which we hold, very clearly, that the power to sell has not been transmitted to the administrator, if by law it could be. Tucker, the donee of the

power, has never renounced it, and the consequent trust; and we are not aware of any impediment to his executing it. He has, it is true, declined the office of executor, but the power of selling real estate is no part of the business of an executor or administrator, unless he obtains license under the statute; he has no interest in the land, and no authority to sell it, except the authority which may be derived from the statute. The executor, in this case, was the donee of a trust power, which was distinct from the office of executor, and the trust might exist for years after the duties of the office of executor had been fully performed. This trust power has never been renounced, and consequently has not been transmitted to the administrator. This point has been very fully considered in *Wills* v. *Cowper*, 2 Ham. 124, and in *Conklin* v. *Egerton's Administrator*, 21 Wend. 430. In the latter case, a power had been granted by will to an executor, to sell and dispose of real estate, and to divide the proceeds among devisees to whom the estate was given by a previous clause of the same will. The executor died without having executed the power; and it was held, that the power could not be executed by an administrator *cum testamento annexo*, notwithstanding the provisions of the revised statutes of New York, that " in all cases where letters of administration with the will annexed shall be granted, the will of the deceased shall be observed and performed; and the administrators of such will shall have the rights and powers, and be subject to the same duties, as if they had been named executors in such will." This decision is fully sustained by a well established principle of the common law, as laid down in numerous authorities. In the year book, 15 Hen. 7, 11, it is laid down for good law, " that if a man has feoffees upon confidence, and makes a will that his executors shall alien his lands, there if the executors renounce administration of the goods, yet they may alien the land, for the will of land is not a testamentary matter." And it was there said that " it was lately adjudged in the exchequer chamber, by all the judges of England, that if a man makes a will of his lands, that his executors shall

sell the land, and alien, &c. if the executors renounce administration and to be executors, there neither the administrators nor ordinary can sell or alien, &c." Sugden on Powers, Appx. No. 1. This doctrine has been maintained ever since, by numerous judicial decisions. It is true that where there is a power in a will to sell, without naming a donee of the power, the executor will have the power by implication, if he is to distribute the proceeds of the sale. So the executor of the executor, in such a case, might execute the power, by a like implication. But I apprehend no case can be found where such an implication has been extended to an administrator with the will annexed. Mr. Justice Cowen, who delivered the opinion of the court in the case above cited from 21 Wend. 430, and whose extensive knowledge of books of authority is well known, says, "I have been unable to find a single book which suggests that an administrator was ever considered as coming, by implication, within any clause by which a power of sale is devised even generally." But if such an implication might be sustained in any case, we think it very clear that it cannot in the present case. Here the power given was coupled with a trust ; and personal confidence was reposed in the executor and trustee. A part of the proceeds of sale was to be held by him for an indefinite length of time, and could not be paid over to the testator's wife and daughter, who were only entitled to the interest during life. This is therefore a much clearer case than that of *Conklin* v. *Egerton's Administrator*, if there be any doubt of the correctness of that decision ; for the executor in that case was to pay over the whole proceeds of sale immediately, and was not bound to hold any part in trust. And by the statute of New York, it was provided that administrators with the will annexed should have the rights and powers, and be subject to the same duties, as if they had been named executors in the will. We do not, however, doubt the correctness of that decision. It is founded on the same principles which were laid down in *Wills* v. *Cowper*, 2 Ham. 124, and by C. J. Tilghman, in *Lessee of Moody* v. *Vandyke*, 4 Binn. 31, and by C. J. Savage, in *Judson* v. *Gibbons,* 5 Wend. 224.

According to these authorities and principles, we are of opinion that the deed, from the administrator of the goods and estate of Ephraim Copeland, was without authority, and void as against his heirs. The administrator had no power to sell by the will; for that was a trust power expressly given to Jonas Tucker, and a part of the proceeds of the sale was to be held by him in trust, which might continue for an indefinite time after the debts of the deceased should be paid, and his duties *qua* executor should be fully performed. A personal confidence was reposed in the executor and trustee, to sell such property " as would most promote the interest of all concerned." Land was also given to the executor in trust for other purposes. So that it is clear he was both trustee and executor, under the will; and the power to sell, being coupled with a trust, has not been relinquished. The administrator therefore had no power to sell under the will, and he had no power under the statute. If he had obtained license to sell, the sale might be valid; but in such case, after the payment of debts, the surplus should be paid over to the trustee named in the will.

This view of the case is not inconsistent with any of the cases cited by the tenant's counsel. In the case of *Farweli* v. *Jacobs*, 4 Mass. 634, it was decided that a direction in a will to the executor, to support the testator's father, is a legacy for which an action lies against the executor, and that the duties of an executor devolve on an administrator *cum testamento annexo*, where the authority is not necessarily connected with a personal trust or confidence reposed in the executor. That decision was founded on the defect of chan ery jurisdiction in this Commonwealth to enforce the trust, which defect has since been supplied; and it involved no question of the effect of a power to sell real estate. The case of *Hall* v. *Cushing*, 9 Pick. 395, was on a probate bond of an executor, who was both executor and trustee; and he was held liable for not investing the assets in his hands, as executor, according to the directions of the will. But if he had settled an account at the probate office, as executor, in

which he was credited as executor, and charged, as trustee, with the trust fund, he would not have been held liable as executor. The case of *Larned* v. *Bridge*, 17 Pick. 339, is decidedly opposed to the tenant's claim. There it was held, that a power to sell land, given by will to the executrix, would not, on her renunciation of the office of executrix, devolve on the administrator with the will annexed. Without making any more particular comments on the cases cited by the tenant's counsel, I will only observe that they are all distinguishable from the present case, and are not, as we understand them, inconsistent with the principles and authorities cited by the demandant's counsel.

What remedy the administrator may have, if he has paid the debts of the deceased, and should hereafter be compelled to refund the proceeds of sale to the purchaser, is a question which the court is not now called upon to consider. Whether he can be licensed to make sale of the real estate, for the repayment of the debts he has paid, or whether Tucker may execute the power under the will, for the same purpose, or whether, if he refuses so to do, this court, as a court of equity, would cause the power to be executed, are questions upon which we express no opinion.

There is no doubt of the general principle, that where there is a power coupled with a trust, and the donee refuses the trust, a court of chancery, on the application of the *cestui que trust*, will cause the power to be executed, so far as may be necessary for the performance of the trust: on the principle of equity, that a trust is not to be suffered to fail for the want of a trustee.

*Judgment for the demandant.*