# CASES

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

OCTOBER TERM, 1852.

---

ROBERT CHAMBERS, executor of JAMES HAMILTON, deceased, complainant, and PAUL TULANE, defendant.

1. It is well settled that a court will not compel a party to pay his money and take a doubtful title, or an encumbered property, unless the party has bargained for such. Although a complainant acted in good faith, and supposed he could give a good title to real estate he had agreed to convey, the defendant will not be compelled to a specific performance where he must take his title subject to any encumbrance not agreed upon.

2. A testator devised as follows: "It is my will and desire that all and every part and parcel of my real and personal estate *hereinbefore not devised or bequeathed,* after my son H. arrives at the age of twenty-one years, in case his mother hath then departed this life, shall be sold *at the discretion of my executors."*

3. *Held,* that land which *had been* devised by will, but which, by the terms of the will, had returned and become part of the testator's estate, was not embraced in the power of sale.

4. That the *power to sell* is given to the executors by *implication.* It is a personal confidence confined to them. It is not transmitted to the executor of an executor.

---

The bill in this cause was filed to compel a specific performance of an agreement in writing, executed between the complainant, as the executor of the last will of James Hamilton the younger, deceased, and the defendant, Paul Tulane.

146

The agreement is for a house and lot of land in Princeton, which the complainant agrees to convey to the defendant, and the defendant agrees to purchase at a price specified.

The defendants, by their answer, resisted a specific performance, on the ground that the property was a part of the real estate of which James Hamilton the elder died seized; that it was disposed of by his will, and James Hamilton the younger took only an interest with several other children of his father; that no power was given to the executor of the said will to sell the land; that if any such power was given, it was not transmitted by operation of law or otherwise to the complainant, as the executor of James Hamilton the younger.

*James S. Green*, for defendant.

The bill sets out the wills of the two Hamiltons, 1st and 2d, and also the articles of agreement between Robert Chambers, executor of James Hamilton 2d, and the defendant.

The answer admits the agreement, but insists that he should not be compelled to fulfill the agreement on his part by the payment of the money, as the complainant, as executor of Hamilton 2d, cannot make a good title. The answer also sets out who are the heirs of Hamilton 1st, and also that a part of the property agreed for is leased to Robert E. Hornor.

Abraham Vanduyn, the surveyor and scrivener, and William P. Sherman, who has the custody of the Hornor lease, were examined as witnesses.

There is no dispute that the property agreed to be conveyed belonged to James Hamilton the 1st, and is the same with that which is devised, a part in the fifth clause of his will, (set out in the bill,) to James Hamilton 2d, and a part to Henry K. Hamilton.

On a bill for specific performance a want of good title is a good defence. A decree for a specific performance is peculiarly within the discretion of the court. *Saxton's Ch. R.* 281; 1 *Green's Ch. R.* 366.

The complainant seeks the purchase money, $7150, and ought to give a good title. 1 *Green's Ch. R.* 524–526 ; *Sugden on Vendors*, page 410, in chapter 7, treating of the title which a purchaser may require.

And this does not depend upon the terms used in the articles of agreement, but the right to a good title is given by law. *Sugden on Vendors*, page 402.

2. As, then, the want of a good title is a good defence, let us next inquire :

1. Can Chambers make a good title ?

2. Has he made or tendered a good title ?

1. Can he make a good title ? He acts as executor of James Hamilton the 2d, who was the surviving executor of James Hamilton 1st. We are to examine the will of James Hamilton the 1st. Under that will this property is devised to James and Henry in fee simple—see 5th and 6th clauses. There is no power of sale given to the executor, the whole direction is to the devisee, and is as to the valuation.

The 8th clause in the will applies to the residue of the estate and expressly excludes what is previously given or devised.

Henry died without issue, and his interest in the real estate devised to him under the 6th clause, vested not alone in James, but his sisters with him—if it is to be controlled by the 8th clause, then as James died without issue, this and the residue of the real estate of James Hamilton the 1st vested in his surviving sisters.

2. Has he tendered a good title ? He has, as executor of James Hamilton 2d, executed a deed or deeds to defendants.

While the general principle is not denied, that the executor of a deceased executor may execute the will of the first testator, yet this power does not extend to sales of real estate, unless in very clear cases.

James Hamilton 2d as executor of his father, James Hamilton 1st, had no power to sell what was devised to Henry under the 6th clause, and could not give such a power to Chambers.

3. As the object of Tulane in the purchase was to obtain immediate possession, that object is defeated by the existence of the lease to Robert E. Hornor

*Wm. Halsted,* for the complainant

The power of the executor of James Hamilton the 2d to sell all the estate devised or which he took under the will of his father is complete, by the power given to sell under his will. This covers the dwelling-house and half-acre of land devised to James Hamilton 2d by the will of James Hamilton the 1st.

Then there was also sold another half-acre by the executor, and included in his deed to the defendant, which half-acre is the land devised by James Hamilton, Sr., to his son, Henry K. Hamilton. As to this part, Henry never took it under the will; he died before he arrived of age, and his mother survived him, and the condition of his paying his sisters never was performed; consequently that devise never taking effect was precisely the same as if it never had been made; the property remained as a part of the estate of James Hamilton, Sr., to be sold by his executor according to the directions of the will. The power of sale, therefore, under the will of James Hamilton, Sr., covers this part of the estate sold.

The will of James Hamilton, Sr., evidently intends that the whole of his estate shall be sold and the money divided in the mode indicated. For it says: " The amount of sales arising from *the above real and personal estate,*" &c. Again it says that if Henry dies without issue, the land devised to him " to be returned and become a part of the testator's estate." Henry died without issue, and even under this clause

the property devised to him, if it ever vested in him, returned to the estate of James Hamilton, Sr., and was a part of the estate described as *" his above real estate,"* which was directed to be sold; so that in either event it was to be sold, and was therefore properly sold by the executor of his executor.

As to this property being in lease, that don't affect the title; besides, the agreement was verbally, that Tulane was to take all the tenants and collect the rents.

THE CHANCELLOR. The complainant seeks to enforce the performance of an agreement in writing, made and executed between himself, as the executor of the last will of James Hamilton, the younger, deceased, and the defendant, Paul Tulane.

The agreement is for a house and lot of land in the borough of Princeton, which the complainant agrees to convey to the defendant, and the defendant agrees to purchase at a price of seven thousand one hundred and fifty dollars.

The defendant, by his answer, resists a specific performance, on the ground that the property in question is part of the real estate of which James Hamilton the elder died seized, and which was disposed of by his will; that James Hamilton the younger is not the sole devisee of the land mentioned in the agreement, but takes only an interest with several other children of his father; that no power is given to the executors by the said will to sell this land, and that if any such power is given, it is not transmitted, by operation of law, or otherwise, to the complainant, as the executor of James Hamilton the younger.

Looking at the bill alone, I cannot ascertain what the question in controversy is between the parties, nor can I see that it makes any case calling for the court's interference. It is true, with the aid of the answer, and of the briefs of counsel, I can see that there are questions which may arise of very considerable importance, but they never can arise upon any facts stated in the bill.

The agreement set out by the complainant, is one executed between himself, as the executor of James Hamilton the younger, and the defendant. First, the will of James Hamilton the younger, is set out at length. The bill then alleges that James Hamilton, the younger, was, at the time of his death, the executor of his father's will. Then the will of the father is introduced at length; then follows the agreement in question, and then the allegation that the complainant tendered the deed in pursuance of the agreement, and that the defendant refused to receive it. And this is the whole case made by the bill. What connection the will or estate of James Hamilton, Sr., has with this agreement, or how, in an agreement between James Hamilton, Jr.'s, executor and the defendant, a controversy can arise, involving the question mainly discussed on the argument—whether the executor of an executor can execute a power conferred on the former by the testator, to sell lands, in no manner appears; nor is there an allusion to any facts or circumstances by which it could be conjectured that any controversy as to these matters could possibly arise.

The bill does not state, nor intimate, whose lands these were, that the complainants agreed to convey to the defendant; whether they were lands of which James Hamilton, Sr., died seized, and if so, how the right to sell them devolved upon the complainant; or whether they were part of the real estate of the complainant's testator; or whether they were the complainant's own lands. The complainant shows no right, title, or interest in any way, to the land embraced in the agreement; and if, in this case, I decree a specific performance, I must compel the defendant to pay upwards of seven thousand dollars, without the complainant's showing, or even alleging that he has any right whatever to execute the conveyance for which this consideration is paid.

But it appears by the answer—and the arguments of counsel on both sides were based upon the assumption—that the land which has given rise to this suit, was land which belonged to the real estate of which James Hamilton the elder died seized, and part of which, the complainant alleges, James Hamilton,

Jr., as executor, was empowered, by his testator's will, to sell, and which power, by his death, was transmitted by law to his executor, who is the complainant, and the other part of which James took, as devisee under his father's will.

As the questions arising upon such a state of facts have been fully discussed, and the complainant may amend his bill to correspond with the facts as they exist; and as both parties desire a settlement of the questions involving their respective rights, I will consider the bill amended in the particulars referred to.

But there is another defect in this bill, which must be removed before the questions alluded to can be properly presented for determination to the court.

James Hamilton, Sr., left his wife Sarah executrix, and his two sons, James and Henry, executors of his will. Whatever power of sale was conferred by the will, was to be exercised after the decease of his wife Sarah, and after Henry arrived at the age of twenty-one years.

Admitting that, by the will, the power of sale of the land in question was conferred on the executors, there can be no pretence that the complainant, in the capacity of executor to the will of James, can have any right to interfere with the execution of the will of James Hamilton, Sr., if Henry, the other executor, is living. The bill does not show that Henry is dead, or that he has renounced, or by what right this complainant can supersede him. The answer alleges that Henry is dead. But how is the fact? Must the court take the case as made by the bill, or by the answer? Though the fact is stated in the answer, the complainant may or may not be willing to take it as a part of his case. But I suppose the fact to be that Henry is dead—that he died before James Hamilton, Jr., and that the complainant is the executor of the surviving executor of the will of James Hamilton the elder.

Upon this assumption, let us examine whether the complainant can fulfill his part of the agreement, and can give to the defendant a good title to the land embraced in it. It is admitted that if he cannot, the defendant ought not to be held to a specific performance.

In examining this question, I must draw my facts from the briefs of counsel. As there stated, they are admitted to be correct, and the pleadings must be amended to correspond.

It is admitted that part of the land in controversy is embraced in the devise in the *fifth* clause of the will; and the residue in the devise contained in the *sixth* clause.

As to the portion embraced in the fifth clause, the complainant insists it was devised to James Hamilton the younger, in fee simple; and that as there is no dispute but that ample power is given to the complainant by the last will of James Hamilton the younger, to sell all the real estate of which he died seized, the complainant can make a good title for that part of the land covered by this agreement. And as to the residue, namely, that embraced in the sixth clause, the complainant insists he has the right to sell and convey it, by virtue of a power of sale contained in the will of James Hamilton the elder.

To the devise made to his son James, in the fifth clause of the will, as well as to the devise to Henry, in the sixth clause, the testator annexes this condition, "and it is my will that after those two events, (these two events were the death of his widow and his son Henry's arriving at lawful age,) mentioned in the above fifth and sixth sections, shall have taken place, the two lots aforesaid shall be valued by discreet and indifferent persons chosen by the parties, and that they, my two sons, shall pay to each of their surviving sisters, or to their lawful representatives, each one equal share, they, my said sons, reserving to themselves each two equal shares therein."

There is no pretence that this valuation has ever been made, or that these sisters have released their interest in the lands. If I compel this defendant to a specific performance, he must take his title subject to this encumbrance, whatever it may be. In decreeing a specific performance, the court must exercise its discretion—not an arbitrary discretion—but a discretion regulated and governed by established principles. As a general principle, it is well settled that the court will not compel a party to pay his money and take a

doubtful title or an encumbered property, unless the party has bargained for such. There is no pretence that such was the case here. The complainant acted in good faith. He supposed he could give a good title to the land, and such was the understanding of both parties in entering into the agreement. If there was no difficulty except the one referred to, I should not be willing to decree a performance of the agreement.

But with regard to the property embraced in the sixth clause of the will, there is an additional difficulty.

The testator gives and devises to his son, Henry K. Hamilton, a lot of land situated in Princeton, together with the shop and appurtenances thereunto belonging, after he arrives at full age, and after the decease of his mother. In a subsequent part of the will is this devise : " And should any of my aforesaid sons or daughters die without leaving lawful issue, it is my will that the legacies of such herein devised or bequeathed, shall return and become part of my estate, and be divided among the survivors of them, according to former divisions, sons each two shares, and daughters each one share."

Henry died without leaving lawful issue, and according to the will, the land devised to him returned and became part of the testator's estate.

But is the power to sell this land given by the will to James Hamilton, the surviving executor? If no such power is given to him, the complainant cannot possess it, even admitting that by law the power of sale given in this will is transmitted to the executor of the surviving executor.

The only power of sale given to the executors is to be found in the eighth clause of the will.

" It is my will and desire that all and every part and parcel of my real and personal estate hereinbefore not devised or bequeathed, after my said son, Henry K. Hamilton, arrives at the age of twenty-one years, in case his mother hath then departed this life, shall be sold at the discretion of my executors," &c.

This power to sell, then, extends only to the real and per-

sonal estate not in his will before devised or bequeathed by the testator; and as the land in question had been previously devised to Henry, the power of sale did not reach it.

It was argued by the complainant's counsel, that Henry having died without leaving lawful issue, and by the terms of the will the land so devised having returned and become part of the testator's estate, it was embraced in the power of sale. But not only was the power to sell confined to the real estate "*not devised or bequeathed*," but a disposition of this land devised to Henry was, in the event which has happened, actually disposed of, independent of the power of sale. It was to be divided among the surviving devisees named in the will "according to former divisions, sons each two shares, and daughters each one share." I am of opinion, therefore, that the complainant can give no title to that part of the land included in the agreement which James Hamilton devised to his son Henry.

As to the other question argued: Whether the power of sale given by the will to the executors, is by law transmitted to the complainant—I am of opinion that it is not.

The principle involved in this question has undergone a most elaborate and able investigation by Mr. Justice Cowen, in the case of *Conklin* v. *Egerton's Administrator*, 21 *Wendell* 432; 25 *Wendell* 224; and the results he arrives at commend themselves to my judgment.

It must depend, like all other questions arising upon the will, on the intention of the testator. If the power is given to individuals, indicating a personal confidence in them, it must be confined to those upon whom it is specifically conferred.

It was held at a very early period, that if a man declare in his will that B and C, his executors, shall sell his land, and die, and B dies and C makes D his executor, and dies, and D sells, this is void, for the trust is strict. In the absence of a clear intention, the representative of an executor could not exercise a power vested in the executor. See *Sugden on Powers* 145.

In the case of *Cole* v. *Wade*, 16 *Ves.* 44, the master of

the rolls, Sir William Grant, says, " I conceive that wherever a power is of a kind that indicates a personal confidence, it must *prima facie* be understood to be confined to the individual to whom it is given ; and will not, except by express words, pass to others, to whom by legal transmission the same character may happen to belong."

He cites a case from *Moore*, where one of the judges doubted whether a power, implying personal confidence, would, even by express words, pass to executors of an executor.   That the executor of an executor has full power and authority by law, to execute the will of the original testator, there can be no doubt ; but this power and authority, conferred by law, extends only to the duties properly appertaining to the office of executor.   It is the duty of an executor, which the law imposes on him to pay the debts, distribute the fund, and settle the personal estate of the testator ; and these duties are, by law, transmitted to his executor.   But it is no part of an executor's duty to sell the real estate ; and he cannot meddle with it, unless by authority of the statute in particular cases, or by the express directions of the testator.   If it is transmitted to his executor, it can be only by the direction of the person by whom the power was conferred—it must be by the intention of the original testator, and not simply because the duties of the executorship devolve upon him.

If, then, the complainant can sell the land in question, he derives the power from the will conferring the trust, and not because it is a duty transmitted to him by law, and appertaining to him *virtute officii*.

In this case, the testator reposes a special confidence in his executors, by express words, and in an emphatic manner ; a confidence which they cannot delegate, and which the law will not transmit in any way to others.   The testator's language is, " shall be sold at the *discretion* of my executors."

The power of sale is given to the executors *by implication.* The testator does not direct by whom the designated lands shall be sold, and the power is implied from the fact that they are to be sold at the discretion of the executors.

Now this distinction has been drawn, that where the power is an implied one, a surviving executor may execute it, and his executor also, but not where it is given by express words. *Sugden on Powers* 138, and authorities cited by Justice Cowen in 21 *Wendell* 436, 437.

But it will be seen, on an examination of the cases, that this distinction exists where the implication arises from the fact that some duty is to be performed by the executor which appertains to him in the discharge of his duty, by virtue of his office, as paying of legacies and debts, or the distribution of the fund. A testator having ordered his lands sold for the payment of his debts—the payment of his debts devolving upon his executor—by implication the power of sale is in him to discharge the duty imposed upon him ; and as the executor of the executor executes the will as the personal representative of the original testator, it may well be argued that he may exercise the power of sale by the intention of the testator—the power being conferred upon the individual upon whom the duty devolved of paying the debts.

But the power of sale conferred by this will is not implied from any duty to be discharged by the executors as the personal representatives of the testator, but from a special confidence which, by express words, he reposed in them. If the power was implied from the fact that they were to pay the debts of the testator, or to distribute the fund, the duty to pay these debts, or distribute this fund, devolving upon this complainant, the power might, perhaps, be properly considered to exist with the duty—the power originating from the duty ; they exist together.

But, surely, where the power is implied, as in this case, from the fact that the testator reposed confidence in the discretion of his executors, it cannot be argued that he could have had any intention of confiding in the discretion of some, to him, unknown person, whom his surviving executor might appoint. If the complainant can sell the original testator's lands, it is because the testator directed them to be sold at the discretion of his sons. They will be sold,

not in compliance with the testator's wishes and directions, but in violation of both, and by a person whom he never contemplated. There is no office or duty to be discharged by this complainant, as the personal representative of the original testator, from which a power of sale can be implied.

In addition to the objections already referred to, to the exercise of the power of sale by this complainant, I very much doubt whether it is a power which can be exercised, except by the executors to the original will, jointly. If it cannot, there can be no pretence that it can be exercised by the complainant. A mere naked power does not survive. Such a power cannot be exercised by a surviving executor, by the common law. By our statute, (*R. S.*, pages 356, 357, sections 19 and 20,) a surviving executor, or an administrator with the will annexed, may sell land pursuant to any power or direction in the will, unless it shall be otherwise expressed in said will. But no such authority is conferred by the statute upon an executor of an executor. Is the power of sale in this will anything more than a naked power? It is true the executors have an interest in the land with other devisees in the will named. But this is not what is meant by *a power coupled with an interest.* These lands are not devised. The title descended to the heirs-at-law. No interest is devised to the executors, and they have no control over the land as executors, until the happening of certain events, and then the only power conferred is to sell.

I am of opinion that this complainant has no power to sell the land in question.

For the reasons given, the prayer of the bill is denied, and the bill ordered to be dismissed. I think the defendant should take his decree, without costs. The complainant, in the whole transaction, acted in good faith. The authority by which he claimed the right to sell was known to the defendant, and both parties acted under an impression that it was a valid authority. The complainant had the written opinion of counsel that he could give a good title. If I put the burthen of the costs of the suit upon the complainant,

Chambers v. Tulane.

it is doubtful whether he will not be personally liable for them, and whether he can take them out of the estate of his testator.

CITED IN *Whitehead* v. *Gibbons,* 2 *Stock.* 236.