DENNIS McMAHON, Junior, Administrator, &c., of RUTH S. RATHBONE, otherwise HARRISON, deceased, v. THOMAS C. ALLEN.

A married woman, having a daughter and two sons, was divorced from her husband, and having afterwards acquired property, made a will, wherein, after deducting the payment of debts, &c., she bequeathed her plate and jewelry to the daughter, absolutely, and gave the residue of her personal property to her executor, in trust, to realize and invest, and pay the income to her sons during their lives; and on the death of one, to the survivor and the heirs of the deceased son; and on the death of the survivor, to pay over the principal to the lawful heirs of both. A house and lot were devised to the daughter, to receive the rents, issues and profits during life, upon trust, however, to pay taxes and assessments, and keep the building insured, and in case of destruction by fire, to apply the insurance moneys to rebuild, the remainder, on her death, to go to her lawful issue, and in default of issue, to her collateral heirs. A similar devise of other real estate was made to the sons. Having subsequently contracted to sell the house and lot for $14,600, the testatrix executes a codicil, directing the investment of a corresponding sum by the executor in the name and to the use of the daughter, she drawing the interest during life, and on her death, the principal to go as provided in the will, relative to the remainder of said house and lot. In case the purchaser fails to fulfill, the provisions of the will, in respect to this real estate, to stand. The codicil mentions additional personal property, to be disposed of in the same manner as the personal property set forth in the will.

After the making of the will and codicil, and in contemplation of marriage with H., the executor named therein, an ante-nuptial agreement is executed by them and by a trustee, K., conveying all her real estate, describing it, to the latter, in trust, to dispose of during the joint lives of herself and H., as she may appoint by deed, writing, will or codicil, or paper in the nature thereof. In default of appointment, the trustee to receive rents and income, and dispose of as she may direct in writing, she to receive same if no appointment of rents and income be made. Receipts of her or appointee to be good, and the

McMahon *v.* Allen.

premises not to be subject to the control or engagements of H. Until a new direction or appointment, the will above mentioned to be taken as an appointment under this marriage settlement. If she survive H., the trustee to convey to her; if not, to her heirs, H. agreeing thereto, with the provision, that in case the purchaser of the aforesaid house and lot completes purchase, the equivalent of the purchase money to be invested as directed in the codicil. Transfers personal property, reciting it, to trustee, to receive and apply as she may appoint, by writing or by will or codicil—the existing will and codicil to be considered an appointment until another be made—she to have free use of the personal estate. Provisions are inserted similar to those relating to the realty, and then H. covenants that she may use the property and convey it in any manner free from his control; and that any property acquired by her during coverture, he will unite in confirming in the trustee, and that neither he nor his heirs, executors or administrators will obstruct her, or her heirs, appointees, executors, administrators or assigns, from holding, enjoying, &c.; and that if he survive her, he and his representatives shall permit her will and codicils to be proven.

The marriage takes place. The purchaser of the house and lot failing to complete, the testatrix conveys them, by appointment, to one Sage, for $14,500, taking back a bond and mortgage for $10,000 of the purchase money, which bond and mortgage she causes to be delivered to the trustee.

The testatrix dies, leaving her husband and three children surviving her. The sons being, as alleged, in foreign countries, the plaintiff, as the daughter's husband, applies to prove the will and codicil, and letters testamentary are issued to H., who files the usual inventory under oath, including, among the assets therein enumerated, the Sage bond and mortgage. The defendant signed the inventory as an appraiser. The executor appointed the defendant his attorney in fact, who collected $1,000 on account of interest on said bond.

H. dies, leaving the bond and mortgage and some other assets, held by him as executor, unadministered, and leaving a will, wherein the defendant is appointed executor. The defendant obtained possession of said unadministered assets, and the plaintiff, having been appointed administrator *de bonis non ad colligendum*, under the will first set forth, demands said assets. The plaintiff obtains from the trustee, under an order of the Supreme Court, a formal transfer of the Sage bond and mortgage, and thereupon institutes a suit against the defendant to obtain the same.

After suit commenced, letters of collection and testamentary, upon the estate of H., were issued to the defendant, and bills of sale and powers of attorney were executed to him by the sons aforesaid. The plaintiff, also, after suit commenced, was appointed administrator *de bonis non*, with the will annexed, of the estate of Mrs. H., and the action was continued in his character as such.

HELD: That by virtue of the will and codicil, the real estate passed directly to the devisees, and that no trust or power in or over the same was vested in the executor, either as executor or trustee.

McMahon *v.* Allen.

That the personal estate therein mentioned, including the fund set apart for the daughter in case the purchaser of the house and lot should fail to fulfill, vested in the executor as such, and not as a trustee, apart from his representative character.

That by virtue of the marriage settlement agreement, the will and codicil became a valid declaration of the trusts created in such agreement, and an effectual appointment of the property, both real and personal—the wife having died in her husband's lifetime without other appointment or disposition.

That the subsequent marriage, as contemplated, did not affect the will and codicil in this respect.

That whether or not any actual conveyance by the trustee, at her beath, was requisite, these instruments, *ex propria vigore*, operated to vest the title in equity according to the directions of the will and codicil.

That a party taking actual possession and control from the trustee, in pursuance of the appointment, could not, nor could persons claiming under him, claim that the property did not vest for the want of a formal conveyance.

That the delivery of the Sage bond and mortgage, with the concurrence of the wife, to the trustee named in the marriage settlement agreement, subjected the same, and the moneys secured thereby, to the operation of said agreement, and of the will and codicil as an existing appointment.

That such delivery was a mere conversion of real estate into personalty, which the wife was empowered to do without any assent of the husband.

That said bond and mortgage were not after acquired property, calling for a new appointment; and if otherwise, the existing appointment was in effect re-adopted, so as to be in fact a new appointment.

Whether the conversion of the house and lot into personalty changed the ultimate destination from the daughter to the sons? *Quere.*

Although a will made by a *feme sole* is revoked by her subsequent marriage, (2 R. S. 64, § 36,) such subsequent marriage does not prevent an instrument, executed before the marriage and established by the marriage settlement, from taking effect upon the property settled according to the very terms of the settlement itself, although such instrument be thereby clothed with all the consequences of a will.

By allowing the will to proceed to probate and accepting letters testamentary, the husband precluded himself and his representatives from insisting that he, as executor thereof, was not an executor under a will, but simply a trustee under an appointment.

An administrator *de bonis non*, succeeds to the powers and duties of the executor, in respect of the personal estate left unadministered.

An administrator *ad colligendum* may maintain a suit to recover personal property merely for the purposes of collection and preservation; and may obtain the same from a third person having no title thereto, although it be claimed that as respects the property in question the decedent died intestate, and a contest is pending in regard to the appointment of an administrator *de bonis non*.

*Held,* further, that the duties of the trustee under the marriage settlement

McMahon *v.* Allen.

agreement, terminated on the death of the wife, and that said agreement, will, and codicil were to be carried into execution by the executor named in the will, and his successors.

That, therefore, the appointment of a new trustee, under the order of the Supreme Court, was unnecessary, and did not operate to aid the title of the plaintiff to the bond and mortgage in question.

That if, however, the trustee be held to have legally continued in the duties imposed by the marriage settlement agreement; the formal transfer to the plaintiff, under the order above referred to, devolved upon the latter the actual title to the property, and clothed him with an active trust in relation thereto.

That such transfer being made to the plaintiff, " as administrator," &c., would not invalidate the same as a transfer to him individually.

That the said order was valid as against third parties, the court having jurisdiction of the subject matter, and the plaintiff, as administrator and husband of a beneficiary, together with the trustee, being present, and satisfactory allegations being made that other *cestui que trusts* were absent from the state.

That if the *cestui que trusts* were not in truth absent from the state, that fact might be a matter material as between them and the former trustee, upon their calling him to account, but would not affect the validity of the order as respects third persons.

How far an attorney or agent of an executor is liable to his successor in the office, for money received in such agency? *Quere.*

An executor cannot give to an agent or attorney, appointed by him to assist in the discharge of his duties, a lien upon the real or personal estate of the testator, for the services or expenses of such agent or attorney.

*Held,* finally, that the bond and mortgage aforesaid should be unconditionally awarded to the plaintiff, together with his costs and a proper allowance.

THIS suit was originally commenced by the plaintiff as an administrator *de bonis non ad colligendum,* and was afterwards continued by him as an administrator *de bonis non cum testamento annexo,* to recover from the defendant a bond and mortgage and other personal property.

The facts adduced from the voluminous exhibits, and other testimony in the cause, may be stated as follows:

On the 24th of April, 1844, Ruth S. Rathbone, being the mother of a daughter and two sons, by a former husband, one Samuel Rathbone, from whom she had been legally divorced, and being then a single woman, made and published, in due form of law, to pass real and personal estate, her last will and testament. After directing the payment of debts,

with testamentary and funeral charges, the testatrix bequeathed her jewelry, plate and apparel to the daughter, Lucy Ann, absolutely, and directed all other personal property to be sold by her executor; the proceeds to be invested in his name, and the income to be paid to the two sons, Samuel C. and Charles T., equally. If one should die, the deceased son's share of income to be paid to his heirs; and upon the death of the surviving son, the principal to be paid over to the heirs of both. A house and lot, number 55 Leonard street, in the city of New York, were devised to the daughter, "to have and to hold the same to her, for and during her natural life, and during all that time to take, have and receive all the rents, issues and profits, upon the following trusts, nevertheless, to keep the buildings thereon insured for their value, and in case the same are destroyed by fire, to apply the money collected from the insurance company for such loss, to rebuild the same, and also to pay all taxes and assessments thereon." The will proceeded: "After the death of the said Lucy Ann, I give and devise all the rest, residue and remainder of said lot of ground and building thereon, herein and hereby devised to her, for and during her natural life, to such of the lawful issue or descendants of the said Lucy Ann as shall be living at the time of her death, to be divided between them in the same manner as if the same would by law descend to them in case the said Lucy Ann had been seized thereof in fee, and had died intestate; and in case of the death of the said Lucy Ann without issue, then the same shall be equally divided amongst her collateral heirs in fee simple for ever." Other real estate, situated in Houston street, was devised to the sons for life, with provisions similar to those accompanying the above devise to the daughter. John Harrison was constituted sole executor.

On the 24th of October, 1844, the testatrix entered into a contract with one Elizabeth Osborne, for the sale to the latter of the Leonard street realty, for $14,600, payable in stated installments.

In December, 1844, the testatrix made and published, in due form of law, a codicil confirming her will, and providing, in anticipation of the fulfillment, by Elizabeth Osborne, of the contract of purchase last mentioned, that a sum equal to the purchase money " be invested by the executor for, in the name and to the use and benefit of my said daughter, Lucy Ann, on bond and mortgage, on improved, unincumbered real estate in the city of New York, she drawing the interest thereof during the term of her natural life, and after her death without issue, to be disposed of as mentioned in my said will and testament hereto annexed; and in the event of the non-fulfillment of the provisions of the said agreement by said Elizabeth Osborne, I do direct the provisions of my said will hereto annexed to stand, with reference to the said house." The codicil then recited that since the making of the will, the testatrix had become possessed of additional personal property, including a chattel mortgage upon furniture, and other articles, all of which were disposed of in the same manner as the personal property mentioned in the will, reserving "jewelry, gold rings, diamonds, gold watch and chain, silver plate, apparel and paraphernalia," to the daughter.

Subsequently, and on the 14th of December, 1844, an indenture, by way of marriage settlement, in contemplation of marriage, was exculed by the testatrix of the first part, Harrison of the second, and one Solomon Kipp, as trustee, of the third. This instrument recited the divorce from Rathbone and her possession of the Leonard street and Houston street real estate, and of divers personal property which was set forth, and also recited the intended marriage, and that in the marriage treaty it was arranged that all her property, now owned or to be thereafter acquired by her, should be at her disposal and for her separate use. The indenture then, in the first place, grants all the real estate above mentioned to Kipp, as trustee, in trust to dispose of, during the joint lives of Ruth S. and Harrison, as she may appoint by deed, writing, will or codicil, or any paper in the nature of a will or codicil, to be by her subscribed and published in the presence of and to

be attested by two or more credible witnesses. In default of appointment, or in case such appointment be incomplete, the trustee to receive rents and income of the realty in respect whereto there may be no appointment, and dispose of the same as she may from time to time direct in writing, she to receive the same from the trustee in the absence of any appointment or direction of such rents and income. Receipts of herself or appointee to be valid. All the realty and the rents, issues and profits to be free from the debts, control and engagements of the husband, and at her own sole and uncontrolled disposal. Until a new direction or appointment, concerning the premises, lands, tenements and hereditaments, the will above mentioned, executed in the presence of two subscribing witnesses, to be taken as an appointment by will, as if made under this settlement. If she survive Harrison, trustee to convey to her; if not, to her heirs in the manner and under the circumstances specified in the will. To this Harrison agrees, with the proviso that if Elizabeth Osborne shall complete purchase of 55 Leonard street, then the purchase money, or its equivalent, to be invested for the benefit of the daughter, as provided in the will.

The agreement of settlement then, in the second place, transfers to the trustee money in bank, a chattel mortgage, a bond, and other money and personal property, in trust, to receive and apply as she may appoint by writing, or by a last will or codicil, the existing will and codicil to be deemed an appointment until the making of some other appointment, she in the mean time to have unrestricted control of her said personal property, and the same to be free from the debts, control and engagements of the husband, and her receipts to be valid. Other provisions were added, similar to those relating to the realty; and it was provided that "if the said party of the first part shall depart this life in the lifetime of her intended husband, then the said Kipp shall pay over, assign and transfer the said trust moneys, funds, securities and premises, and interest, and annual production and payments, or such part or parts thereof, respectively, as shall be

then unapplied, unappointed and undisposed of, after answering the trusts and purposes hereinbefore contained, to the person or persons named in the aforesaid will and testament above referred to, or to such person or persons as are named in the codicil thereto annexed."

The agreement further recited, that she was possessed of household furniture, money, plate and other effects in certain premises. Harrison covenants that she may use and may convey by any appointment, will or codicil, the same to be at her sole disposal and free from his control. He covenants, also, in behalf of himself and his heirs and personal representatives, that any real or personal estate hereafter vesting in her, or in any person in trust for her, or in him in her right, shall, if necessary, be conveyed, assigned, assured and confirmed to Kipp, in trust, to be held under the provisions of the settlement; and to this end, that he will, singly or jointly with others, execute all such acts, deeds, conveyances, assignments or assurances as may be requisite. And he further covenants, for himself and his heirs and personal representatives, against any obstruction upon her, or her heirs, appointees, executors, administrators or assigns, in holding, enjoying, receiving, taking and disposing of the said estate, moneys, funds, securities and premises, in the manner of and according to the settlement; and if he survives her, that he, Harrison, his heirs, executors and administrators, shall permit her will and codicils to be proved by the executors.

On the 19th of December, 1844, five days after the execution of the mutual agreement, Ruth S. and Harrison intermarried.

On the 3d of March, 1846, Mrs. Harrison entered into a contract with one Frances C. Sage, afterwards called Frances C. Becket, for a sale to the latter of the premises, number 55 Leonard street, for $14,500, Elizabeth Osborne having died without completing her purchase.

On the 1st of February, 1848, in pursuance of the agreement of March 3, 1846, Ruth S. executed and delivered to

Frances C. Sage a deed conveying the premises last mentioned to her; and Kipp, the trustee, executed a like conveyance to Frances C. Sage, who executed and delivered back to the trustee, at the request of Mrs. Harrison, and in accordance with the provisions of the marriage settlement, a bond, secured by a mortgage upon the premises purchased by her, for $10,000 of the consideration money.

On the 1st of October, 1848, Mrs. Harrison died, without having made or executed any further or other appointment or disposition concerning her property. The daughter and the two sons, and also Harrison, survived her.

On the 30th of October, 1848, the plaintiff, as the husband of Lucy Ann, and alleging that the sons were absent in foreign countries, produced the will and codicil to the surrogate of the city and county of New York for probate, as the last will and testament, and codicil thereto, of Ruth S. Harrison. Citations having been issued to the heirs at law and next of kin, and no one appearing to oppose the probate, the will and codicil were duly proved.

On the 4th of January, 1849, the defendant, acting as the agent and attorney of Harrison, the executor appointed in the will, collected from Frances C. Sage, otherwise called Becket, the sum of $350 as interest upon her bond to Nov. 1, 1848, and endorsed thereon a receipt, which he signed " Jno. Harrison, Ex'r, Thomas E. Allen, attorney," and afterwards paid the money so collected to Harrison.

On the 8th of February, 1849, letters testamentary were granted to Harrison, the executor, on the probate of the aforesaid will and codicil.

The defendant and Mr. John A. Livingston were appointed by the surrogate appraisers; and with their assistance, Harrison, on the 26th of March, 1849, made, returned and filed with the surrogate an inventory, purporting to contain all the assets coming to the executor, and the said inventory was verified by the oaths of Harrison and of the appraisers, of whom the defendant was one.

At this time there had come to the possession of Harrison

either by the delivery thereof to him by the trustee, Kipp, or otherwise, the bond and mortgage made by Frances C. Sage, which, with other choses in action, were enumerated in the inventory, and were mentioned in the complaint. The same were alleged, in the answer, to have been conveyed and transferred by Solomon Kipp, as trustee, to John Harrison, after the death of Ruth S., in obedience to the provisions of. the marriage settlement.

On the 1st of December, 1849, the defendant, as the agent and attorney of Harrison, collected from Frances C. Sage the sum of $700, for interest on her said bond and mortgage to November 1, 1849, and endorsed upon the bond a receipt, which he signed " Jno. Harrison, Ex'r, Thomas E. Allen, Att'y."

On the 10th of March, 1850, John Harrison died, leaving a last will and testament, dated March 14, 1849, wherein the defendant was appointed the executor.

On or before his death the bond and mortgage of Frances C. Sage, and the other choses in action above referred to, came into the possession of the defendant, and so continued until the commencement of this action.

On the 23d of March, 1850, the plaintiff received, from the surrogate of the city and county of New York, special letters of administration, authorizing him to collect and receive the goods, chattels and personal estate of the said Ruth S. Rathbone, otherwise Harrison, left unadministered by the said John Harrison, deceased, and appointing the plaintiff collector for that purpose.

On the 25th of March, 1850, the plaintiff demanded of the defendant, among other things, the Sage bond and mortgage, at the same time exhibiting the said letters of collection granted to the plaintiff, under the seal of the surrogate. The defendant refused to deliver.

On the 18th of April, 1850, after notice served upon Kipp, and upon no other person or persons, the plaintiff presented to the Supreme Court a petition, and obtained an order thereon, directing, among other things, that Kipp transfer

said choses in action to the petitioner, as such special administrator; and in pursuance of this order, Kipp, before May 4, 1850, executed a transfer of said choses in action to the plaintiff as such special administrator.

This action was commenced May 7, 1850, in the name of the plaintiff, as administrator *ad colligendum.*

On the 20th of January, 1851, and before the defendant answered the complaint, the will of John Harrison was, by a decree of the surrogate, established as his last will and testament; and on the 20th of February, 1851, special letters of administration thereon were issued by the surrogate to the defendant, authorizing him to collect and receive the goods, chattels and personal estate of the said John Harrison. And on the 22d of April, 1853, during the pendency of this suit, letters testamentary upon the will of Harrison were issued to the defendant.

On the 15th of July, 1852, during the pendency of this action, letters of administration, with the will annexed, upon the estate of Ruth S. Rathbone, otherwise Harrison, were issued to the plaintiff, after a protracted litigation; and thereupon the suit was continued in the name of the plaintiff, as such administrator with the will annexed, pursuant to the provisions of § 121 of the Code of Procedure.

Within about three months and a half after the action was commenced, but before answer, to wit, on the 24th of August, 1850, Samuel C., one of the sons of Ruth S., and residing at Santa Fé, New Mexico, executed an irrevocable power of attorney to the defendant, empowering the latter to act for him in all matters relating to his rights and interests in the estate of his mother. And on the 22d of March, 1852, after answer, Charles T., the other of the sons of Ruth S., and being a mariner sailing from the port of London, England, executed to the defendant an assignment of his rights and interests in the said estate.

Additional facts were elicited, touching choses in action other than the Sage bond and mortgage; but the litigation, upon the appeal to the general term, was narrowed

down to the question of the right to the possession of the said bond and mortgage only, and to questions relating thereto.

The plaintiff claimed title and right of possession in the bond and mortgage in question :

*First.* As collector, and subsequently, when suit was revived, as administrator *cum testamento annexo*, of Ruth S. Harrison, formerly Rathbone.

*Second.* As assignee of Solomon Kipp, trustee of her separate estate, under the order of the Supreme Court directing such assignment, and appointing him trustee in place of Kipp.

The plaintiff claimed that—

*Third.* The property in question formed a portion of her separate estate, over which, by the marriage contract and the appointments thereunder, the husband, as such, had no control, or if he once had, estopped himself and those under him from afterwards claiming, and which, by the operation of the marriage contract and the appointment thereunder, and their probate and the acts under the probate, vested in the executor as such, and after his death vested in the plaintiff as his successor.   And that—

*Fourth.* The property was wrongfully withheld by the defendant from the plaintiff.

The defendant alleged that he was the agent of John Harrison, and had a lien upon this property for services and advances ;

That Ruth S. Harrison died intestate, as to all property of which she became possessed after December 14, 1844 ;

That the same belongs to the estate of John Harrison ;

That John Harrison left a will, appointing the defendant executor thereof, which will was admitted to probate, and (pending the appeal) the defendant was appointed administrator *ad colligendum* of Harrison's estate ;

That Ruth S. Harrison and John Harrison had a marriage settlement, whereby it was covenanted, that at her death her trustee should transfer all her personal property then undis-

McMahon v. Allen.

posed of, and of which she should die intestate, to John Harrison, as agent and trustee of her sons, Charles T. and Samuel C. ; that said personal property was transferred to John Harrison accordingly; and

That the defendant is the agent of said Charles T. and Samuel C.

The cause was tried at a special term, before WOODRUFF, J. At the close of the plaintiff's testimony the defendant moved for a nonsuit, on the grounds that—

*First.* Ruth S. Harrison died intestate and without exercising any power of appointment, if any she had, over any property acquired after her marriage, December 17th, A. D. 1844.

*Second.* Upon whatever property she exercised a valid power of appoinment, she vested the title of the same in John Harrison, as trustee, and an administrator *de bonis non* of the estate of Ruth S. Harrison would not succeed to his rights as such.

*Third.* The plaintiff cannot make title to the property in question, (the Sage bond and mortgage,) either as collector or as assignee of Solomon Kipp, trustee.

The application for a nonsuit was denied.

The trial occupied a protracted period, during the months of May, June and July, 1853; and in the autumn of 1853, the evidence was summed up, the argument of the cause occupying several days. The suit, in the first instance, was decided in July, 1854. As the opinion and decision at the special term were afterwards adopted at the general term, the same will be printed after the following points and arguments of counsel, although the latter, as now published, are in the shape wherein they were presented to the general term.

During the litigation, the bond and mortgage were placed in the hands of a receiver, appointed by the court.

*Albert Mathews* and *Samuel Beardsley,* for the defendant, made and argued the following points:

*First.* The appeal is from so much of the judgment of the special term as adjudges that the plaintiff recover of the defendant the bond of Frances C. Sage to Solomon Kipp, trustee of the separate estate of Ruth S. Harrison, otherwise Ruth S. Rathbone, for $10,000, and a mortgage by said Frances C. to said Kipp, on lot No. 55 Leonard street, New York, to secure said bond, both dated on the 1st day of February, 1848, with costs and an allowance amounting to $502 91.

*Second.* When said bond and mortgage were made, said Ruth S. was the wife of John Harrison, and she remained such to her death. Assuming the validity of the trust of her separate estate, said bond and mortgage were her equitable personal property at her death, for she made no sale, transfer or other disposition of them which took effect during her life. It therefore becomes material to inquire whether she made any disposition of them, which took effect after her death, and that is the point now to be examined.

(1.) On the 25th of April, 1844, said Ruth S., then being unmarried, made a will in due form, and shortly thereafter, while still unmarried, a codicil thereto. There is nothing in the codicil which is supposed to bear on this question; but by the will said Ruth S. directed, amongst other things, that all her personal property, except certain specified things, which of course did not include this bond and mortgage, as they were not then made, be sold by John Harrison, who was named in said will as executor, and that he collect all debts due or to become due to her, and after paying her debts and funeral and testamentary charges, keep the balance of the money, so to be received by him, out on bond and mortgage, in his own name in trust, and collect and pay the interest to her sons, Samuel C. and Charles T. for life, &c., the principal to go to their heirs, &c. Had this will been in force at the decease of said Ruth S., the bond and mortgage would have been disposed of by the clauses of the will referred to; but subsequently to the making of said will, said Ruth S. intermarried with John Harri-

son, by which said will and codicil were revoked and annulled. As a will, they thereby ceased to have any vitality or force whatever. (2 R. S. 64, § 44; *Doe* v. *Staple*, 2 D. & E. 697; 1 Pow. on Dev. 545.)

(2.) On the 14th of December, 1844, a marriage settlement was entered into between said Ruth S. of the first part, John Harrison of the second and Solomon Kipp of the third, which conveyed the real estate and certain parts of the personal estate of said Ruth S. to said Kipp, in trust, with power on her part to direct and appoint by deed or writing, in the nature of a will, to whom the same should be conveyed by said trustee, and declaring that until she should exercise such power of direction and appointment, certain clauses in said will should be deemed valid and effectual for the purpose of disposing of such of said property as was referred to in said clauses, as therein directed. Now, assuming the validity of said marriage settlement, and that so far as the provisions in said will are thus recognized as valid directions under that instrument, they are, in effect, incorporated into and made parts thereof; still that will not affect the present question, for the general clause in the will directing all the personal estate, including debts due, &c., to be sold and collected, and the proceeds to be invested by said John Harrison, as trustee, &c., is not so recognized by said settlement, nor does said settlement make any other disposition of said bond and mortgage.

(3.) By said marriage settlement, said lot (55) was conveyed by Ruth S. to said Kipp, in trust, with power on her part to direct and appoint to whom it should be conveyed by said trustee, and providing that until she should exercise said power the provisions in her will directing to whom said lot should go on her decease, should be deemed valid for that purpose. By said will, said Ruth S. had devised said lot to her daughter, Lucy Ann, &c. And by the codicil to said will, Ruth S. recited, that since the making of said will she had contracted to sell said lot to Elizabeth Osborne, and in anticipation of her performance of said contract, she thereby

directed a sum equal to the purchase money agreed to be paid to be invested for said Lucy Ann; but it was further declared by said codicil, that in the event of the non-fulfillment of said contract by said Elizabeth Osborne, the provisions of said will should stand. The contract with Elizabeth Osborne fell through, and said Ruth S. subsequently agreed to sell said lot to Frances C. Sage, to whom, by the direction and appointment of said Ruth S., it was conveyed by said Kipp on February 1st, 1848, the bond and mortgage in question being then given for part of the purchase money thereof. Thus assuming the validity of the marriage settlement, the devise of this lot to Lucy Ann, which was recognized as a valid appointment by the marriage settlement, was annulled by the sale, &c., and the conveyance to said Frances C. Sage; and this real estate was, by said sale and the taking of said bond and mortgage for the balance of the purchase money, turned into personalty. We find nothing, therefore, in the parts of said will, codicil or marriage settlement just referred to, which directs what disposition should be made of said bond and mortgage on the death of said Ruth S., and there can be no pretence that it was in any other way disposed of by her.

*Third.* As said Ruth S. made no disposition of said bond and mortgage which took effect during her life, or after her death, she, as to said bond and mortgage, died intestate, and title thereto passed directly to her husband, John Harrison. (2 R. S. 75, §§ 29, 30, p. 98, § 79 ; *Stewart* v. *Stewart*, 7 Johns. Ch. R. 229 ; *McCosker* v. *Selden*, 1 Brad. R. 64.)

*Fourth.* On the death of John Harrison, said bond and mortgage passed to his executor, the defendant. (2 R. S. 75, § 29; *Roosevelt* v. *Ellithorp*, 10 Paige, 415; *Lockwood* v. *Stockholm*, 11 ib. 87.) .

*Fifth.* The plaintiff, as administrator, &c., had no right or title to said bond and mortgage at any time.

I. If, as to said bond and mortgage she died intestate, all right and title thereto vested in her husband, John Harrison; and on his death in the defendant, as his executor. This has

already been shown.  There can be no such thing as letters of administration on the goods of the wife left unadministered by the husband, nor can there be letters of administration on her goods, &c., with the will annexed, for she cannot leave a will.  Marriage nullifies a will previously made by her, and she can make none during her marriage.  (2 R. S. p. 64, § 44, p. 56, § 1, p. 60, § 21; Laws of 1837, p. 528, § 23; 2 R. S. 78, § 45, p. 76, § 38; *Strong* v. *Wilkin*, 1 Barb. Ch. R. 9; *Moehring* v. *Mitchell*, ib. 264.)

II. But if the marriage settlement can be understood as directing, by way of reference to the will of said Ruth S., this disposition to be made of said bond and mortgage after her death, so that she did not, as to said bond and mortgage, die intestate, it will be seen that they were to be transferred by the trustee, Kipp, to the person or persons named in said will as entitled to the general personal estate of said Ruth S., that is, John Harrison, or the two sons of Ruth S.

(1.) If the directions in the settlement just referred to, taken in connection with that part of the will thereby recognized and adopted, apply to John Harrison, that is, if he was the appointee, he was thereby made the trustee of said sons, as will be seen by the words of the will.  (See, also, *Judson* v. *Gibbons*, 5 Wend. 224; *Concklin* v. *Edgerton's Administrators*, 21 ib. 441.)  On the decease of said John Harrison, said trust, so far as the same remained unexecuted by him, was for the Court of Chancery to execute.  (1 R. S. p. 730, § 68, p. 773, § 2; *Hawley* v. *Ross*, 7 Paige, 107; *Dias* v. *Brunell's Ex'rs*, 24 Wend. 9.)

(2.) If said directions apply to the sons of said Ruth S., so that they were the appointees as to this bond and mortgage, the trustee, Kipp, was bound to transfer the bond and mortgage directly to them, unless they took by legal operation of said settlement and appointment, without any transfer from Kipp.

(3.) Whoever may have been entitled to said bond and mortgage on the death of said Ruth S., in virtue of said will and marriage settlement, would take directly under the trus-

tee, Kipp, to whom the property for which the bond and mortgage were given, was by said settlement conveyed, the will being merely a direction and authority to said Kipp to make the transfer, if the law rendered that necessary, to the particular person or persons for that purpose named in said will. (*Strong* v. *Wilkin*, 1 Barb. Ch. R. 9; *Moehring* v. *Mitchell*, ib. 264; *Southby* v. *Stonehouse*, 2 Ves. Sen. 610; *Van Wart* v. *Benedict*, 1 Brad. R. 114; *Smith* v. *Garey*, 2 Dev. & Batt. 42; *The Am. Home Miss. So.* v. *Wadhams*, 10 Barb. S. C. R. 597.)

The result, in every aspect of the case, is, that the plaintiff, as administrator, special or general, of Ruth S., and with or without the nullified will annexed, had no right whatever to said bond and mortgage.

*Sixth.* The plaintiff sues as special administrator, &c., of the goods, &c., of Ruth S., unadministered, &c., and makes title thereto in that character and capacity alone, alleging that the trustee, Kipp, assigned said bond and mortgage to him as such administrator, &c., on the 27th of April, 1850. This allegation is true; that is, said Kipp, the trustee, did on that day execute an assignment of all his right, title and interest in and to said bond and mortgage, to said plaintiff as such special administrator. But said Kipp, trustee, &c., then had no right or title thereto or interest therein, for said right, title and interest had previously passed to said John Harrison in virtue of his marital rights, or as trustee, as has been shown, or to the sons as appointees, &c., or to Lucy Ann, if she was the appointee; and the plaintiff, as such administrator, had no right to, or capacity to take title to, or an interest in, said bond and mortgage. As administrator, he had no power but to administer, &c., on the goods, &c., of said Ruth S., left unadministered, &c.; but the bond and mortgage in question were not, if the will appointed where they should go, left unadministered. And he can only sue for debts due to the deceased person, represented by him, or for the property or effects of the deceased still remaining as assets unadministered. (2 R. S. 113, §§ 2, 3, 4.)

*Seventh.* If the order of the Supreme Court of the 18th April, 1850, discharging said Kipp, as trustee under the marriage settlement, and appointing the plaintiff in his personal capacity, and not as administrator, trustee in his stead, is valid, that does not affect this case, as the action was not brought to enforce any such right, if any such existed. The plaintiff sues as administrator, on the right and title he has as such, and not on what he may have had as trustee under the marriage settlement.

*Eighth.* That John Harrison took out letters testamentary on the estate of Ruth S., and made and filed an inventory, which included the bond and mortgage in question, and that the defendant acted as an appraiser of the property so inventoried, are facts foreign to the case, and can neither confer any right on the plaintiff or detract any thing from the right which said Harrison then had to said property. Ruth S. left no will, and had not, nor could she have, an executor. If she died intestate, so far as respects this bond and mortgage, letters of administration would have been proper, although beyond the payment of debts the property so left by her would have belonged to her husband; but, if by the will she directed and appointed to whom this bond and mortgage should go on her decease, title thereto passed directly to the persons or person so entitled on her decease, by force of the marriage settlement and said direction and appointment, as was held by the judge at special term. In that event no letters testamentary or of administration were necessary or proper, for there was nothing on which to administer. If John Harrison erred in taking out letters testamentary, &c., or if the defendant erred in acting as appraiser, &c., the plaintiff, as administrator of said Ruth S., did not thereby acquire any right or title to the bond and mortgage which he would not otherwise have had, nor was John Harrison thereby deprived of any of his rights. The doctrine of estoppel has no application to such a case. (Co. Lit. 352, a, b; 3 Bl. Com. 308; 2 Smith's Lead. Cas. 438, 440, 446, note; *Pickard* v. *Sears*, 6 Adolph. & Ell. 469; *Dezell* v. *Odell*, 3 Hill, 225; *Coles* v. *The Bank of England*,

10 Adolph. & Ell. 437; *Gregg* v. *Wells*, ib. 90; *Frost* v. *The Sun Mut. Ins. Co.*, 5 Denio, 154.)

*Ninth.* The covenants of John Harrison contained in the marriage settlement, although they bind him so that any direction and appointment made by Ruth S. in her will or codicil, and recognized by said settlement, or thereafter made by her, should and would be effective, they do not bar any right which the law gives him to property of Ruth S., of which she died intestate, or to which he was entitled as trustee, in virtue of said settlement and the direction and appointment of Ruth S., contained in said will.

*Dennis McMahon, Jr.*, and *Ralph Lockwood*, for the plaintiff, made and argued the following points:

POINT FIRST.—As to the title of the plaintiff as collector.

Subd. I. The letters *ad colligendum* to the plaintiff confer on him the power to collect all the assets of the testatrix, and to bring all suits that may be necessary for that purpose in all cases where the administrator of the estate could bring suit. (2 R. S. o. p. 76, §§ 38, 39 and 40, p. 261, 4th edition; 2 R. S. o. p. 113, §§ 2, 3 and 4; *Dale* v. *Rosevelt*, 8 Cow. 333.)

He, therefore, is vested in this cause with all the powers of an administrator *cum test. annexu*, besides being a species of statutory receiver for the benefit of whom it may concern, in which latter character he has more extensive authority than that of the administrator *cum test. annexo*. (*Colt* v. *Lasnier*, 9 Cow. 320, 329; 2 R. S. § 22, o. p. 72; ib. o. p. 78, § 45; *Mitchel, Adm'r*, v. *Mitchel*, 4 B. Monroe Rep. 380.)

Subd. II. The administrator *ad colligendum* is under a legal obligation to collect all the assets of the testatrix which shall come to his knowledge or possession, of which she died possessed and which remain unadministered. (2 R. S. o. p. 76, § 39; ib. o. p. 77, §§ 42 and 43; *Shultz, Adm'r*, v. *Pulver*, 3 Paige, 182; *Lidderdale* v. *Robinson*, 1 Brock Rep. 159.)

Subd. III. And while the letters remain in force and unre-voked, no court of law or equity can go behind those letters to inquire whether they were properly or improperly, right-fully or wrongfully granted.

The only question they can inquire is, whether the property is of the decedent's estate and is unadministered. (*Fishwick* v. *Sewell*, 4 Harr. & J. 393; *Jackson* v. *Jeffers*, 3 A. K. Marsh. 309; 2 R. S. o. p. 80; § 56; ib. o. p. 61, § 20; ib. 4th ed. p. 267, § 7; ib. o. p. 117, § 24; *Flinn* v. *Chase*, 4 Denio, 85.)

Subd. IV. The court cannot, in an action brought by the administrator *ad coll.*, inquire into. or adjudicate to whom the property will belong, or to whom it ought to be distri-buted when recovered. It has no jurisdiction to make such distribution, or to look to what may be the final legal desti-nation of the property.

2 R. S. p. 76, §§ 39 and 40, makes the collector the statu-tory receiver for the benefit of whom it may concern.

2 R. S. o. p. 92, § 52, and subsequent sections in art. 3, show that the matter of accounting is the province of the surrogate's court to inquire into.

*Westervelt, Ex'r,* v. *Gregg,* 1 Barb. S. C. R. 469, is a judicial construction of the statute relative to the rendition of accounts by executors and administrators. (*Lunkins* v. *Cobb*, 2 Day's Rep. 62; *Kelley's Administrators* v. *Kelley's Distributees*, 9 Alabama, 908; *Andrews* v. *Jones*, 10 ib. 406; *Eisenbise* v. *Eisenbise*, 4 Watt's Rep. 134; *Merritt's Adm'r* v. *Ray*, 4 Iredell, 14; *Lawrence* v. *Wright*, 23 Pick. 128; *Coffin* v. *Simpson*, 9 Iredell's N. C. Rep. 126; *Alexander* v. *Steward*, 8 Gill & Johns. 226.)

POINT SECOND.—As to the title of the plaintiff as assignee of the trustee.

Subd. I. The defendant, Allen, cannot set up that Harri-son, the husband, was or would be eventually entitled to the property in controversy in this suit; even if he were, that gives the defendant no title to the possession. The separate personal property of Ruth S. Harrison, for which this suit is

brought, was vested in the trustee at the time of her death. (2 R. S. o. p. 71, § 16; ib. o. p. 448, § 11; ib. o. p. 81, § 60; *Johnson* v. *Wren*, 3 Stuart's Rep. 172; *Estate of Benj. Hinds*, 5 Whart. 138; *Hall* v. *Cushing*, 9 Pick. 295; *Peacock* v. *Monk*, 2 Ves. Sen. 190.)

Subd. II. The assignment of that separate personal property by the trustee, Kipp, to the plaintiff, as special administrator, under an order of the Supreme Court, before this suit was brought, vested in him the whole legal title to it, and gave him the right to pursue it in whosesoever hands it might be, in case his appointment as collector did not do so completely. (2 R. S. o. p. 449, § 17; *Platt* v. *Oliver*, 3 McLean, 27.)

Subd. III. If that order had not been made, it would have been the duty of the special administrator, notwithstanding, to have demanded of the trustee to assign and deliver over such separate personal property to him, and of the trustee to have so assigned and delivered it; and in case of refusal on the part of the latter, the court would have ordered him to do so, as the administrator *ad coll.* was the legal guardian of that estate, until an administrator *de bonis non*, with the will annexed, had been appointed. (2 R. S. p. 76, o. p. §§ 39 and 40; *Green* v. *Collins*, 6 Iredell N. C. Rep. 139 and 152; *Liptrot, Adm'r,* v. *Holmes*, 1 Kelley's Rep. 381; *Beam* v. *Bumpas*, 9 Shepley, 549; *Olwine's Appeal*, 4 Watts & Serg. 492; *Clemens* v. *Caldwell*, 7 B. Monroe, 171.)

Subd. IV. The defendant cannot set up a want of notice to him of the application to the Supreme Court to compel the trustee to assign to the plaintiff. It was only necessary (if at all) to give notice to the parties interested in the property for the time being. Those were the trustees, holding the title, and the collector or statutory receiver authorized to keep it. The court below found there was no fraud committed by the plaintiff in obtaining the assignment. In no sense was any body, or could any body be prejudiced by an act which must result to the benefit of the parties entitled to the fund, viz., its preservation. The Supreme Court had general jurisdiction to make the order, and no one in a collateral proceeding

can impeach their order. (1 R. S. o. p. 730, §§ 69 and 70.) On the death of a *cestui que trust*, the personal property held in trust passes to the personal representatives of the *cestui que trust*. Solomon Kipp's estate as trustee ceased by the operation of the Revised Statutes, (1st vol. p. 730, § 67,) the moment the *cestui que trust*, Mrs. Harrison, died. There was, in point of fact, no necessity for any assignment whatever. It was merely a precautionary measure, *ex abundanti cautela*.

The case of *Liptrot, Adm'r*, v. *Holmes*, 1 Kelley's Rep. 381, in addition to the previous citations of the statute, establishes this completely.

POINT THIRD.—On the question whether this property formed portion of her separate estate, and the husband's rights thereunder.

Subd. I. The marriage contract vests number 55 Leonard street in a trustee, for her sole use and benefit and behoof during her life, and after her death in her appointees; and in its various provisions and covenants, indicates its intention that the intended husband, John Harrison, was to have no control over or estate in the same.

The mere change of that property, by selling it and taking back a purchase money mortgage for the greater part of the purchase money to her trustees, does not make it, in any sense, after acquired property.

Subd. II. The ante-nuptial contract estops Harrison, and all claiming under him, from setting up any interest in or right to the separate property of his wife, during her life or after her death. (*North Am. Coal Co.* v. *Dyett*, 7 Paige, 9; 20 Wend. S. C.; *Jacques* v. *Meth. Church*, 17 Johns. R. 548; *Hamrico* v. *Laird*, 10 Yerger, 222; *Albany Ins. Co.* v. *Bay*, 4 Comstock, 9; *Gachenbach* v. *Bronse*, 4 Watts & Serg. 546; *Williams* v. *Clayborne*, 7 Smedes & Marshall, 488; *Ward* v. *Thompson*, 6 Gill & Johnson, 349.)

Subd. III. Even if it were after acquired property, the personal property acquired after the marriage by the wife is expressly made subject to the trusts and provisions of the

ante-nuptial contract, and, of course, to those of the will and codicil; and the husband covenants that he will execute all such deeds, &c., as may be necessary for assuring the real and personal property, according to the trusts, intents and purposes as therein expressed. The representatives of the husband are expressly bound by this covenant. In fact, the husband's assumption of the executorship, his returning an inventory, specifying this mortgage to be her separate property, and his collecting interest on it, amounts to an assurance of that mortgage in her, or, in any event, to a ratification of taking the mortgage to the trustees as such. (*Strong* v. *Skinner*, 4 Barb. S. C. R. 546.)

POINT FOURTH.—As to the effect of the marriage contract in the adoption of the will and codicil, and of the operation of the probate, and the assumption by the executor of letters testamentary.

Subd. I. The case of the *Am. Home Miss. Society* v. *Wadhams*, 10 Barb. S. C. R. 597, recognizes the right of a married woman to make a will of personal property, under a power since the Revised Statutes; and if the will is made before marriage, and is expressly covenanted in the settlement to be a valid appointment, until another is made in its place it is good as an appointment. *Logan* v. *Bell*, 1 Com. Bench, 872; *Moehring* v. *Mitchell*, 1 Barb. Ch. Rep. 264, admit the same doctrine as to wills made under powers after marriage.

Subd. II. The same instrument declares the will then executed should be taken to be such direction and appointment under the marriage contract, until a new one be made by her.

The will and codicil thus became part and parcel of the ante-nuptial contract, and were, to all intents and purposes, incorporated with it; except as to the formality of probate and the issuing of letters testamentary it ceased to be a will, and became a contract *inter vivos*. (*American Home Miss. Soc.* v *Wadhams*, 10 Barb. S. C. R. 597; *Strong* v. *Skinner*, 4 ib. 546; *Logan* v. *Bell*, 1 Com. Bench R. 872; *Newlin* v. *Freeman*, 1 Iredell's N. C. R. 514; *Whitfield* v. *Hurst*,

3 Iredell's E. R. 242; *Leigh* v. *Smith*, 3 ib. 142; 1 Rev. Stat. o. p. 735, § 110; ib. 736, § 116; ib. 737, § 130; 1 Lord Raymond, 676; *Heyer* v. *Burger*, 1 Hoffman's Ch. R. 1.)

Subd. III. No question of the revocation of the will of Ruth S. Harrison can be raised in this suit. The granting of the said letters testamentary by the surrogate gives force and validity to the will, as a will, and the husband cannot impeach those letters which he accepted and acted under. He could only call the will in question by an appeal, after probate was allowed by the surrogate. (*Heyer* v. *Burger*, 1 Hoffman's Ch. R. 1, decides the point; *Colton* v. *Ross*, 2 Paige, 396; *Clark* v. *Fisher*, 1 ib. 172; 2 R. S. o. p. 61, §§ 29, 30 to 39, o. p. 61 and 62; ib. 80, §§ 56 to 81, § 58; Laws of 1847, chap. 280, § 17; 2 R. S. o. p. 66, § 69, 4th ed. 251; *Estate of Wagner*, 1 Ashmead's R. 448.)

Subd. IV. Even if the question of the probate of the will could be attacked thus collaterally, yet it was right to prove those instruments as wills. The Revised Statutes, in declaring the formalities of the execution of a power by appointment by will, provides that the instrument must be executed and attested in the same manner as other wills. (1 R. S. o. p. 736, § 115.)

The case of *The American Home Missionary Society* v. *Wadhams*, &c., 10 Barb. 597, shows that it was proper to prove such instruments as wills; and the following cases show that such instruments have always been proven and established as wills; and the policy of our laws requires all such instruments to be proven and authenticated in the proper surrogate's office.

In *Morrell* v. *Dickey*, 1 Johns. Ch. R. 153, and Opinion, 156, a common writing was proven as a will, yet held valid in a collateral proceeding by the chancellor. In *Tucker* v. *Inman*, 4 Mann. & Grang. 1,049, the whole subject of probate of wills of married women is exhausted. (*Whitfield* v. *Hurst*, 3 Iredell's Eq. R. 242; *Newlin* v. *Freeman*, 1 ib. 514.)

Subd. V. The statute declares, that before any letters testa-

mentary shall issue to any executor, he shall take and sub-
scribe an oath or affirmation that he will faithfully and honestly
discharge the duties of an executor. The executor here has
taken that oath. Can this court absolve him or his repre-
sentative from the obligation thus assumed? Is that repre-
sentative not estopped from setting up that his testator was
not an executor, especially where that representative acted as
attorney, in fact, of his testator as executor. (2 R. S. 71,
§ 13.)

POINT FIFTH.—As to the point, whether the executor, John
Harrison, held this property as executor or as trustee, and
whether the execution of the trust passed to the plaintiff as
administrator *de bonis non cum test. annexo.*

Subd. I. The devise in the will of the personalty is not to
the executor in trust, but is the devise of a power in trust to
the executor, as such. The words "his own name" have
reference to the antecedent, "my said executor," as will ap-
pear by the subsequent, "so held by my said executor in
trust."

In *Depeyster* v. *Clendenning*, 8 Paige, 310, the chancellor
holds: There can be no doubt, therefore, that in cases where
the execution of a trust, or of a power in trust, is confided by
the testator to his executors, as such, they cannot execute the
trust without also taking out letters testamentary, and assum-
ing the office of executor.

In such cases the administrator, with the will annexed, is
probably entitled to execute all the trusts of the will in the
same manner as if he had been named therein by the testator.

In *Edgerton, Administrator,* v. *Concklin,* 25 Wend. 224, it
is distinctly conceded that the administrator *cum test. annexo*
has the same power, with reference to the personal estate.

Same principle in *Dominick* v. *Michaels,* 4 Sand. S. C. R.
409; *Stagg* v. *Jackson,* 1 Coms. 206; *Bogart* v. *Hertel,* 4
Hill, 192; *Drake* v. *Price,* 1 Seld. 430.

Subd. II. Even if John Harrison was to hold the personal
property in trust, it was so only as to the residuary legacies.
The specific legacies were to be paid, also debts, and a sum

of money invested for the daughter of the testatrix. The executor died thirteen months after assuming letters, and in less than twelve months after returning his inventory, with his duties uncompleted ; therefore, administration was to be completed, and for that purpose, if no other, the plaintiff is entitled to the custody of the property. (*Hall* v. *Cushing*, 9 Pick. 395.)

Subd. III. Under the codicil, in case Elizabeth Osborne completed her purchase, the proceeds of the house, or its equivalent, were to be invested in the name and for the benefit of Lucy Ann, the daughter of the testatrix. It is argued that that legacy was adeemed, because Elizabeth Osborne did not complete it; yet it appears one Frances C. Sage completed it in her place.

Under the marriage contract, the trustee was to take after acquired property under trusts which would correspond, or nearly correspond, with the trust interests therein before expressed ; those were—

(*a.*) That such property as she unappoints should go to the persons named in the will and codicil, viz., the legatees, in the manner therein provided for.

(*b.*) That the purchase money to be paid by Osborne, or its equivalent, shall go to Lucy Ann.

Codicil provides, " a sum equal to the amount of the consideration money shall be invested by her executor for Lucy Ann."

If this legacy was good, the executor had the duty to perform, as such, to invest it before he could hold the other for the two sons, as their trustee. This he did not do, and it is necessary now that the plaintiff should, as administrator *cum test. annexo*, do so, and for that purpose he is entitled to the funds.

Is it good ? It was manifestly the intention of the testatrix, and of the parties to the instrument, that Lucy Ann should have the house or its proceeds.

In the appointment of the house to Frances C. Sage, the testatrix confirms the provisions of the marriage contract,

which would amount to a republication or renewal of the legacy, for it is therein provided to be paid to Lucy Ann.

The fact that the proceeds were contemplated as coming from Elizabeth Osborne, instead of Sage, does not alter the intention, for that was to give to Lucy Ann a sum equal to the proceeds. (Ambler's Rep. 260; ib. 401, 566; *Ashburner* v. *McGuire*, 2 Brook. C. C. 108; *Mann* v. *Copland*, 2 Maddock Ch. 223; *Stout* v. *Hart*, 2 Halst. Ch. Rep. 414; *Enders* v. *Enders*, 2 Barb. S. C. R. 362; *Gardner* v. *Printemps*, ib. 83; *Cartwright* v. *Cartwright*, 23d vol. Law Lib. Wooddessin's Lectures, p. 221, o. pp. 330, 331.)

POINT SIXTH.—The court properly admitted the letters of administration *cum test. annexo* of the plaintiff; there was a change of interest, on which a motion had been made to revive an order made, (see order,) and the letters had relation back to the death of the previous executor. (See Code, § 121; *Merritt, Adm'r,* v. *Ray,* 4 Iredell, 14.)

POINT SEVENTH.—The award of costs and allowance in the court below should not be disturbed.

The defendant having no earthly claims, tried his luck; created a great litigation, which has lasted for five years; put the estate of Mrs. Harrison to a great expense, which the costs and allowance will not fully compensate. That estate and the court acted properly in allowing those costs, and should have allowed a much larger sum than it did.

POINT EIGHTH.—The action is rightfully brought against the defendant.

1. The defendant had possession of the property in question at the time of the commencement of this suit.

2. He became possessed of that property on or before the deceased executor's death.

3. At the time he became possessed of it, and of the commencement of this suit, he had no right to it or title in it.

4. Having no authority, he retained it, after a demand made of him for it by the statutory receiver, the administrator *ad coll.*

5. He was, therefore, a wrong doer.

POINT NINTH.—This action is in the nature of a bill in equity for an account of the property claimed, and may be maintained by the plaintiff, as administrator *de bonis non cum test.*, and as collector, whenever any of the property has gone into the hands of any person whatever. (2 R. S. 449, § 17; 2 Hill, 181, 225; 2 Rev. Stat. o. p. §§ 60, 267, 4th ed. 78; *Farwell* v. *Jacob*, 4 Mass. 634; *Colt* v. *Lasnier*, 9 Cow. 320, 329.)

POINT TENTH.—If treated as in the nature of an action of replevin or trover, it is equally sustainable.

Before the Revised Statutes, any person intermeddling with the estate of the testator, would be liable as an executor *de son tort* to creditors.

But those statutes abolishing executors *de son tort*, render them responsible as wrong doers to the representatives of the deceased. Any intermeddling would formerly constitute an executor *de son tort*, and now would constitute a wrong doer. (*McKnight, Adm'r*, v. *Morgan*, 2 Barb. S. C. R. 171; *Cuttle* v. *Aldrich*, 4 Maule & Selw. 75; *Thorp* v. *Stallwood*, 6 Scott's New Reps. 715; *Babcock* v. *Booth*, 2 Hill, 185.)

LASTLY.—The plaintiff, therefore, claims a decree or judgment affirming the judgment below, with costs.

The plaintiff having obtained a decree and judgment in his favor at the special term, the defendant appealed to the general term, where the case was argued at great length.

The following is the opinion filed upon the decision at the special term, and also the opinion delivered at the general term adopting and affirming the decision and opinion first mentioned:

WOODRUFF, J.—(after stating the facts.)—The following are my conclusions of law, from the facts found in this case:

*First.* That in and by the instruments referred to as the last will and testament of Ruth S. Rathbone, (afterwards Harrison,) and the codicil thereto, considered irrespective of the marriage settlement agreement and the trusts therein ex-

pressed, and also irrespective of the subsequent marriage of
said Ruth, the real estate therein mentioned passed directly
and by virtue thereof to the devisees therein named, and that
no trust or power in or over the same was vested in the exe-
cutor therein named, as executor, trustee or otherwise, and no
act whatever was to be done by him in respect thereto to
carry these instruments into full effect. That as to the per-
sonal estate therein mentioned, including, of course, the fund
to be set apart and invested for the benefit of Lucy Ann
Harrison, in the contingency contemplated by the codicil, to
wit, the fulfillment by Elizabeth Osborne of her agreement for
the purchase of the house number 55 Leonard street, the
same vested in the executor therein named, (he proving the
will and codicil,) first, for the payment of debts and legacies;
and second, upon and for the execution of the trusts thereby
declared, to wit, the sale of the property, the collection of
debts due, and the investment of the proceeds and payment
of the income to arise therefrom to Samuel C. and Charles
T. Harrison, during their lives respectively; and in respect to
the fund directed to be invested for the said Lucy Ann, to
suffer her to draw the interest thereon during her natural life;
and upon the death of these beneficiaries respectively, to pay
over the same as in such will and codicil directed. That the
personal property, and all the trusts, powers and duties vested
in such executor, or devolved upon him in respect thereto,
vested in and were devolved upon him as executor, and as
executor only, and not in the character of a trustee, apart
from such representative character.

*Second.* That by virtue of the marriage settlement agree-
ment, and the conveyance and transfer to Solomon Kipp,
therein contained, the said instrument, so entitled last will
and testament, and the codicil thereto, became, in legal effect,
incorporated in or annexed thereto, so that they became and
were a valid declaration of the trusts upon which the property
was to be held by the said Kipp, and an effectual appoint-
ment of the property, both real and personal, in case the said
Ruth should die in the lifetime of her intended husband,

without making any other appointment or disposition thereof. That the consummation of the said intended marriage being the very event in completion of which the said marriage settlement was entered into, did not in any manner alter the effect of the last will and codicil in this respect. They remained, according to the intent of the said marriage settlement, valid and effectual as such appointment of the property conveyed and assigned to the trustee. Whether the direction given to the trustee (Kipp) in the marriage settlement to convey, assign and transfer the property, real and personal, in conformity with any directions, dispositions or appointment, by the said Ruth S., and in default of other appointment, then to the person or persons named in the aforesaid last will and codicil, rendered an actual conveyance or transfer by the trustee, at her death, necessary to give full legal operation to such will and codicil or not, these instruments *ex proprio vigore* operated to vest the title in equity, according to the directions in such will and codicil contained. Upon the death of the said Ruth S., nothing remained to be done by the said Kipp, beyond the mere acts of transfer. For all purposes material to the consideration of the rights of the parties in a court of equity, the property vested at the death of the said Ruth S., according to the directions contained in such last will and codicil; and whether an actual conveyance of the real estate embraced in the trusts was or was not necessary to vest the legal title in the persons named as devisees in such last will and codicil, it is not necessary, for the purposes of this case, to inquire. The delivery of the personal property, in conformity with the directions contained in the marriage settlement, to the person who was appointed to receive the same for the appointed purposes, and his actual possession thereof, and exercise of acts of control over the same, and his collection and appropriation of the same, sufficiently vested the title in him, whether any assignment or transfer in writing was executed by said Kipp, or not. Indeed, it might, perhaps, be better said that such actual possession and control are sufficient to warrant the inference of

an actual transfer by suitable formalities to vest in him the title. Be this as it may, the title vested in equity on the death of the said Ruth S.; and the delivery of the personal property thereupon sufficiently conferred the legal title thereto, and, in my opinion, as effectually as if an actual assignment in writing had been made. And again, after taking such possession and control, it would not lie with John Harrison, or those claiming under him, to allege that he had not title under and according to the provisions of the said appointment. And, finally, the answer of the defendant herein, distinctly avers an actual conveyance and transfer by Solomon Kipp, the trustee, to John Harrison, in obedience to the provisions of the marriage settlement agreement, and, therefore, as against this defendant, such a transfer may, for the purposes of this case, be assumed.

*Third.* That the execution and delivery of the bond and mortgage by Frances C. Sage, to the trustee, under the marriage settlement, with the concurrence of the said Ruth S., had the effect of subjecting such bond and mortgage, and the moneys secured thereby, to the operation of the provisions of that instrument, and of the appointment then in being (to wit, the said last will and codicil). It was a conversion of a portion of the real estate held by the said Kipp as trustee, into personal estate. The said Ruth S., by the provisions of the marriage settlement, had power to effect such conversion, and to direct the proceeds, or any part thereof, to remain in the hands of the said trustee; and she did no more than this. No assent of John Harrison was necessary to subject those proceeds of a sale of a portion of the trust estate to the operation of the marriage settlement, or the appointment by which the ultimate disposition of the trust estate was to be governed. This bond and mortgage was in no sense after acquired property, in respect to which a new appointment by the said Ruth S. was necessary; and, therefore, if it were concluded, as insisted by the defendant's counsel, that in respect to property acquired after the marriage, a new appointment must be made by the said Ruth,

or in default thereof, the same must be deemed her property unappointed, and at her death subject to the marital rights of John Harrison, and passing to him as her legal representative for his own use, and without accountability to any one except her creditors, in accordance with our statute regulating the rights of a husband over the property of his deceased wife, (2 Rev. Stat. 75, § 29,) this bond and mortgage did not fall into that condition. By the mere conversion of real estate into personalty, while it was continued in the hands of the trustee, it was not withdrawn from the operation of the trust or the then existing appointment relating thereto. But, on the other hand, if it be conceded that this bond and mortgage, by reason of this entire change in the nature of the property, is to be deemed after acquired property, or if it were conceded (as also insisted by the defendant's counsel) that the conveyance to Frances C. Sage was itself an appointment by the said Ruth of the house and lot number 55 Leonard street to the said Sage, which defeated the will and codicil so far as related to that property, the result would not be different; for the power of the said Ruth, under the said marriage settlement, further to appoint the ultimate disposition of the property, still continued, and the making of the bond and mortgage to Kipp, (the trustee,) with the concurrence of the said Ruth, was even in that view of the case an adoption of all the provisions of the marriage settlement and the existing appointment, (to wit, the will and codicil,) as effectual as if the said Ruth had, by a new appointment, in form directed the said Kipp to hold the same for the purpose already named in the will and codicil referred to. Whether, by the conversion of the house and lot number 55 Leonard street into personal estate, the making and delivery of the bond and mortgage by Sage to the trustee had the effect to change the ultimate destination thereof from Lucy Ann to the two sons, it is not necessary to decide; and, therefore, whether its ultimate diposition by the trustee, Kipp, or by John Harrison, as executor, or the present plaintiff, is to be in conformity with the directions contained in the codicil,

or whether (the sale to Elizabeth Osborne having failed) the same passed under the general direction contained in the will in regard to personal property, does not affect the decision of the present case. It is sufficient to decide that it remained subject to the trust and to the appointment made by the will and codicil, whichsoever of them may, when that question arises, be held to govern it. If the provisions of the codicil be deemed applicable to any conversion of that house and lot into personalty in the hands of the trustee, Kipp, and the sale and conveyance to Sage be deemed a substitution for the contemplated sale and conveyance to Osborne, then the beneficiary named in the codicil may require that a corresponding amount be invested for her benefit; and if such sale be deemed a revocation of the devise made of the house and lot, and also of the direction contained in the codicil, then Samuel C. and Charles T. Harrison may require that the proceeds, with the other personal estate, be invested for their benefit. But in either aspect of that question, the appointmènt contained in the will or the codicil applies to it and will govern it.

*Fourth.* That although, by the provisions of our statute, a will made by an unmarried female is to be deemed revoked by her subsequent marriage, (2 Rev. Stat. 64, § 36,) such subsequent marriage does not operate to prevent an instrument, executed before the marriage, and established by the marriage settlement, from taking effect upon the property settled, according to the very terms of the settlement itself. By the marriage settlement in this case, John Harrison and all those claiming under him are concluded. By the covenants contained therein, he and his heirs, executors and administrators were bound to permit the said last will and codicil to be proved as such; and, therefore, by implication, to acquiesce in all the legal results which flow from their full recognition as the last will and testament of the deceased; whether strictly and technically a last will or not, they are to be deemed such, so far as the legal or equitable rights of John Harrison are affected by them; and, in a court of equity

especially, neither he nor his representatives will be permitted, in the face of his express covenant, to deny to them their appropriate effect as such.   And again, whether strictly or technically a last will and testament or not, the said will and codicil were, as before suggested, a valid appointment, and were testamentary in their character, and an appointment testamentary, or in the nature of a last will and testament, in which the duties to be performed are such as properly appertain to the character of an executor, (whether made and adopted by a marriage settlement before marriage, or made in pursuance of the marriage settlement after marriage,) is appropriately proved as a testamentary disposition; (at least so far as personal estate is affected by it ;) and when the will of said Ruth was so proved in conformity with the express covenants contained in the marriage settlement itself, it became, as against John Harrison and his representatives, in effect in equity, and, as I think, at law, the last will and testament of the decedent as truly as if she had not married. Still further, John Harrison, fully competent to protect all his rights, legal and equitable, did, in conformity with his express covenants, suffer the said instrument to be proved as the last will and testament of the decedent, and accepted letters testamentary, and assumed to act as executor.   By this I think he was precluded, and that his representatives are precluded from insisting upon the merely technical objection that he was not executor of a will, but trustee under an appointment.   And as a consequence of these propositions, and of either of them, John Harrison, at and before his death, held the personal property received by him (which formed a part of the trust estate) as executor, with the powers, and subject to the responsibilities of that character, under and in conformity with the provisions of the said last will and codicil proved before the surrogate, and adopted by him as such ; and if, in virtue of his marital rights, he could lawfully claim that those instruments, by reason of the marriage, had lost their original character, he had waived any such claim, and voluntarily established them, notwithstanding any infirmity therein, (if

any,) arising from the fact of the marriage of the decedent, so that, both at law and in equity, he was bound to execute them as the last will and testament of his deceased wife.

*Fifth.* John Harrison, thus holding the said personal property as executor, having died, letters of administration *de bonis non*, with the will annexed, would confer upon the administrator, and did, when granted, confer upon the plaintiff herein, all the rights and powers in respect to such personal property which were vested in the said Harrison by virtue of said will and codicil; and the title to such property, therefore, passed to the plaintiff, subject to the performance of the trusts, duties and directions (remaining unperformed) in those instruments contained. Whatever doubt may exist in respect to the powers of the administrator *de bonis non*, with the will annexed, over the real estate of the decedent, under the provisions of our statute, (2 Rev. Stat. 72, § 22,) there is none, I think, in regard to his succession to the powers and duties of the executor in respect to the personal estate left unadministered. (See *Concklin* v. *Egerton, Administrator*, 21 Wend. 430, and *S. C.* in Error, 25 Wend. 224.)

*Sixth.* And for the same reasons, though for the purposes of collection and preservation merely, the plaintiff, on the receipt of special letters of administration *ad colligendum*, became entitled to collect, receive and hold the said personal estate, and as such for that purpose to maintain this suit. In one aspect of the claim made by the defendant herein, the right of the administrator *ad coll.* to maintain an action for the property, is even more clear. The defendant insists that as to the bond and mortgage of Frances C. Sage, the said Ruth S. Harrison died intestate, and that John Harrison, in virtue of his marital rights, became entitled to it absolutely for his own use, subject only to the payment of debts. If that were conceded, it would not impair the right of the administrator *ad coll.* (pending a controversy in regard to the appointment of an administrator *de bonis non*) to sue for and recover the bond and mortgage from a third person who had no title thereto.

*Seventh.* It follows that the plaintiff in either capacity, whether as an administrator *ad coll.*, in which this suit was commenced, or in his character of administrator *de bonis non cum test. annexo*, in which capacity the suit has been revived in his name, is entitled to recover the personal property in the complaint mentioned, forming part of the trust estate, so far as the same was in the hands of the defendant at the time of the death of the said John Harrison, or has come to his hand since that death.

*Eighth.* This case has been thus far considered upon the view which I conclude to be the correct construction of the marriage settlement agreement, viz.: That whatever conveyance may have been necessary to vest the title to the real estate held by Kipp, as trustee, it was sufficient, in respect to the personal estate, that John Harrison received it and held it, made collections thereof, and exercised control over it, and that in this he acted as executor as above stated. And the case has also been considered upon this further view of the marriage settlement, which, though not without some hesitation, I also conclude to be correct, viz., that the duties of the trustee, Solomon Kipp, ceased with the death of the said Ruth S. Harrison, and the transfer by him of the property to the person named as executor in the said last will and codicil; that he (Solomon Kipp) was not the person who was to carry into execution the provisions of those instruments. Under these views the appointment of a new trustee, so far as the personal property was concerned, was wholly unnecessary, and thus far it has been so considered; and it conferred upon the present plaintiff no better title than he had without such appointment, and without an assignment or transfer to him by the said Kipp, and for the reason that the power of Kipp over the personal estate had ceased, his trust had been performed, and the property had passed into the hands of John Harrison, nothing remaining to be done by him as trustee of the personal estate, and there was neither title nor trust in him to be transferred. But if the title to the personal property remained in Solomon Kipp until he executed a formal

instrument of transfer in writing, or if (as some of the language of the marriage settlement would at first seem to indicate) Solomon Kipp is to be deemed, by force of the marriage settlement, a substituted trustee, appointed (in default of any other appointment or disposition) in the place and stead of the executor of the said last will, to perform the trusts contained in the latter, then, and in either event, the appointment of the plaintiff as trustee in the place and stead of Solomon Kipp, and the conveyance and transfer of the property by Kipp to the plaintiff, devolved upon the latter the actual title to the property, and clothed him with an active trust to be performed in relation thereto, and he is entitled to recover the property upon that very ground. Although I have not adopted the construction last intimated, yet the trust declared in the marriage settlement, in respect to the personal property, is expressed in terms which in no slight degree indicate a design that the trustee (Kipp) was himself to appropriate the property to the uses and purposes appointed in the said last will and codicil. Thus it provides, that "if the said party of the first part shall depart this life in the lifetime of her intended husband, that then the said Kipp shall pay over, assign and transfer the said trust moneys, funds, securities and premises, and interest, and annual production and payments, or such part or parts thereof, respectively, as shall be then unapplied, unappointed and undisposed of, after answering the trusts and purposes hereinbefore contained, to the person or persons named in the aforesaid will and testament above referred to, or to such person or persons as are named in the codicil thereto annexed." If, by "person or persons" in this clause be intended the beneficiaries provided for in the will and codicil, viz., the children of the decedent, who are to receive the interest and income, and their lawful issue or heirs at law, who are ultimately to receive the principal, then clearly the trust conferred upon Kipp is still subsisting, and is an active trust, which, by the appointment of the plaintiff as trustee in his stead, and the transfer of the property to him by such former trustee, has,

together with the title to the property, devolved upon the plaintiff.

*Ninth.* In view of the suggestions above eighthly made, I deem it material to state my further conclusions in relation to the effect of the appointment made by the Supreme Court of this state above referred to, and which was claimed by the defendant's counsel, on the trial, to be inoperative for the want of parties. That court had jurisdiction of the subject matter. It had the plaintiff, who was interested therein as administrator, and also husband of his wife, a beneficiary and the trustee, in its presence and jurisdiction, and satisfactory allegations that the other *cestui que trusts* in being were out of the state. Its order was therefore operative and effectual, so far as the parties before the court were concerned; and a conveyance by the trustee, in obedience to that order, passed the legal title, and charged the new trustee with the trusts, (so far as such trusts remained to be executed.) This is sufficient to enable the new trustee to maintain his title to the property itself. Where the other *cestui que trusts* seek to hold the former trustee responsible for their interest in the trust estate, it may be material to inquire whether they were in fact absent from the state, and how far he could be relieved from responsibility by a proceeding of which they had no notice. But as against third persons, the proceeding passed the title, and therefore, as against the present defendant, if there is any thing in the suggestions eighthly above stated, the appointment was valid; nor is its effect impaired because the conveyance was made to the plaintiff as administrator. The transfer of the title was made, and as against this defendant the title passed, and the words, " as administrator," &c., may either be regarded as surplusage, or the plaintiff may be said to hold the property charged with such trust, as according to the true construction of the instruments under which it is held, properly appertain to the title. There is no defect in this respect which can avail this defendant.

*Tenth.* In respect to the bond and mortgage of Frances C. Sage, now in the hands of the receiver herein, the decree will

McMahon *v.* Allen.

provide that it be delivered to the plaintiff, together with any moneys collected thereon by the receiver, after allowing to the receiver his expenses and commission. In respect to the interest money collected by the defendant on the 8th day of December, 1849, which is the only money which appears by the proofs to have come to his hands and not shown to have been paid over to the executor, John Harrison, there is no claim in the plaintiff's complaint to this money, nor that the defendant has it in his hands. It is therefore not necessary to say how far the agent or attorney of an executor is liable to his successor in the office for money received in such agency.

*Finally.* I find nothing in the case to warrant any claim by the defendant to any commission, or to any lien upon the bond and mortgage in question, for services or expenses rendered or paid as the agent or attorney of the late executor. Such former executor could give no such lien if any such services were rendered or expenses incurred. I do not, therefore, perceive that there is any occasion for ordering an account between the parties. I can only regard the defendant, however sincere he may have been in believing that he was not bound to deliver the property, as a wrong doer. The decree should therefore award to the plaintiff the bond and mortgage, and direct its delivery to him by the receiver, and award to the plaintiff his costs, with an allowance of two hundred and fifty dollars.

A decree was entered, and judgment awarded accordingly.

DALY, J., at general term.—Without setting forth my reasons at length, which would include a repetition of much that has been said by the judge at special term, I am of opinion that the judgment should be affirmed.

INGRAHAM, FIRST J., at general term, concurred in affirming the decision at the special term.

Decision and judgment affirmed.